Application of Frank A. RICE and
Elias W. Wilson.

Patent Appeal No. 7253.

United States Court of Customs
and Patent Appeals.

Feb. 18, 1965.

William T. Sevald, Royal Oak, Mich.,
for appellant.

Clarence W. Moore, Washington, D. C.
(Jere W. Sears, Washington, D. C., of
counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH and ALMOND,
Judges.

MARTIN, Judge.

The question the court must answer in
this appeal is whether appellants' novel
air cleaner, as represented by claims 1,
2 and 3 of their application serial No.
816,556 entitled "Air Cleaner" filed on
May 28, 1959, is an obvious variation
of the devices of the prior art. No claims
stand allowed in the application, which is
stated to be a continuation-in-part of
application serial No. 698,474 filed No-
vember 25, 1957 for an "air cleaner de-
vice."

The centrifugal air cleaner appellants
disclose is useful on internal combustion
engines or air-compressors, particularly
under very dusty conditions. The air
cleaner is of simple construction and is
"self cleaning" in operation. Reference
to the accompanying figures of the appli-
cation will aid in an understanding of
the structure and operation of the de-
vice:

Figure 1 shows the air cleaner consisting of separator portion 10 mounted on the air intake of an internal combustion engine such as that of a tractor, with a hose 15 connected to a vacuum developing portion or venturi 16 mounted on the

engine exhaust. Cross section views of those two portions of the device are seen on the right and left of Figure 2. In operation, when the engine is running, air is drawn into the cleaner via cap 30 following the path indicated by arrows A and B. The air flows over inclined vanes 29 which impart a "spiral swirling motion" to it. As the air is drawn downward in its spinning path, entrained dirt is centrifugally thrown toward the outer wall 20 of the "tank" or can-shaped separator portion of the air cleaner. The dirt and some air enters collecting chamber 17 by passing through the space 26 between the wall 20 and baffle 25, while relatively clean air enters carburetor air intake 12 via tube 11. The air-entrained dirt passes out of chamber 17 into hose

15 as indicated by the arrow we have labeled C. The air and dirt is drawn out by the action of the venturi or vacuum developing device 16. Exhaust gases exit from the engine as shown by the arrow we have labeled E. As the gases pass through the tapered section 44 they draw the dust laden air from hose 15 as shown by the arrow we label D.

There is no question that the cleaner is operable and has achieved some degree of commercial success. However, it is our view that the appellants' claimed air cleaner [1] is an obvious variation of the following references:

| Schutz | 1,496,908 | June | 10, 1924 |
| Altgelt | 2,033,368 | March | 10, 1936 |
| Société (French) | 1,106,384 | Dec. | 19, 1955 |

The Altgelt reference is relied on to show a cap used on the intake of a tractor

[1.] Claim 1 is typical of the three claims on appeal:

"1. A self cleaning air cleaner device for removing foreign particles from air such as dust and dirt particularly suitable for internal combustion engines comprising a tank having cyclindrical [sic] side walls constituting an air-swirling chamber having an upper air inlet end and a lower air outlet end, an air outlet tube leading through said tank lower end having an inner end located at a point above said tank lower end; said tube being concentrically disposed in said tank in spaced relationship to said tank side walls; a bottom closure plate between said tank and said tube supporting said tube relative to said tank; said tube having an outer end for attachment to the air intake of an air consuming device and an inner end for receiving air from said tank; a frusto-conicle [sic] baffle plate on said tube adjacent said tube inner end and above said tank air outlet end; said baffle member having an outer peripheral edge in spaced relationship to said tank side walls; said baffle leading axially downwardly and radially outwardly from said tube; a center-block plate concentrically disposed within said tank adjacent its upper end preventing air flowing directly into the axial center area of said tank, vanes located between said plate and said tank side walls and disposed on an angle relative to the axis of said tank and overlapped relative to one another to prevent air traveling axially therethrough and to

cause the air traveling therebetween to define a spiral path; the cumulative cross-sectional area between said vanes being slightly more than the cross-sectional area of said tube; the spiral path of air traveling between vanes and said tube inner end developing centrifugal force in said air so that heavier particles move radially outwardly in their travel with the air so as to locate the particles adjacent said tank walls radially outwardly of said tube; the air entering the inner end of said tube leaving said tank internal area spaced radially inwardly from the sidewalls of said tank so as to avoid the particles radially adjacent said tank sidewalls; the particles falling between said baffle plate and said tank walls; a bottom closure between said tube and said tank adjacent said tank lower end forming a particle chamber above said closure plate between said tank and tube below said baffle plate; a vent pipe leading through said tank wall to said chamber for particle evacuation, a hose connected to said vent pipe, and a vacuum developing mechanism connected to said hose; said mechanism drawing the particle laden radially outer air in said tank radially beyond said tube between said baffle and tank walls so as to draw off same thereby preventing it entering said tube for transfer to the air consuming device."

Claim 2 is dependent on claim 1 and additionally specifies the cap, while claim 3, similarly dependent on claim 1, details the vacuum developing mechanism.

air cleaner. The reference is used only in conjunction with the rejection of claim 2, the sole claim calling for a cap.

The major reference, Société, describes "fluid separators operating by centrifugal force," to be used particularly for the separation of moisture from steam. The detailed description will be by way of reference to the drawing therein:

The drawing shows a tubular separator section or "connection" 1 which is the same size as the steam line to which it is connected by employing flanges 2 at either end. Helical fins 7 are mounted within the tubular section. Moist gases or steam flow downwardly in the direction of arrow A, while the helical surfaces produce "a rotation of the gas or steam current." A larger annular casing 3 is spaced around a slot 4 and funnel-shaped surface 5 and together define a collection chamber. Société states:

"* * * The liquid droplets contained in the current thus precipitate on the helical surfaces and on the inner wall of the connection, then flow downward over the funnel-shaped surface of the circular slot into the annular casing, from which they may be extracted at any time.
* * *

*« * * * The upper edge of funnel 5 penetrates into connection 1 only to the extent sufficient so that the fluid flowing from the inner wall of the connection and on helical surfaces 7 must be trapped by the funnel and diverted through circular slot 4 into casing 3. * * * "*

A valve "or usual condensate extraction device" is provided at outlet 6 to tap off the moisture that has been separated.

Schutz is directed to a "suction air cleaner" used for "eliminating dust from the air before it enters the carburetors of internal combustion engines," and which is "non-clogging in operation." The suction air cleaner of Schutz clearly is a centrifugal type cleaner, the dust laden air being caused to "whirl with high velocity" by tangential inlet projections or fins and the engine suction. The dust is ejected at the bottom of a downward path by use of a venturi, while the clean air is directed upwardly to the engine intake by a conical baffle. As we view the rejection of the examiner and the decision of the board, the Schutz reference was used for two purposes. First, to show the exhaust driven "Venturi tube" or vacuum developing device, and second, to show the concept of such a venturi device in combination with an air cleaner as the means by which dust is ejected.

Claims 1 and 3 were rejected by the examiner as "unpatentable over Société in view of Schutz," while claim 2 was so rejected "further in view of Altgelt," and the board affirmed. Since the differences in the claimed structure and that of the references are readily apparent, we take "unpatentable over" as meaning obvious within the meaning of 35 USC 103.

As will be apparent from their arguments discussed below, appellants seem to misconstrue the rejection. The *differences* in the separator portion of the structure claimed, as compared to that of Société, were deemed obvious by the examiner and the board, and we agree, while the *combination* of the separator portion with venturi and cap, and their use on internal combustion engines at normal air pressures are equally obvious to those in the art as shown by Schutz and Altgelt. With regard to the *differences*, the examiner and board are not combining the references by modifying the structure of Société by reference to structure shown in Altgelt or Schutz. With regard to the *combination*, it is evident that centrifugal separation operates on the differences in density between the carrier gas and the solid or liquid particles to be separated. The references thus cannot be said to be from non-analogous arts and thereby not combinable. We shall discuss these two aspects of the rejection separately below.

## I  The Differences

Appellants' major contention concerning the differences in their structure as compared to Société appears best summarized by the argument that:

"The applicants deny that the Societe patent may be combined with the Schutz patent as alleged by the Patent Office. The applicants contend that the modifications made by the Patent Office are based on the applicants' invention. Neither the Societe patent nor the Schutz patent singly or in combination suggest their combination nor does either patent suggest taking the Societe patent out of a steam pressure line and connecting two low pressure devices to one end and exposing the other end to atmospheric pressure. These charges [sic: changes?] by the Patent Office are certainly not *obvious* to one having *ordinary* skill in the art based on the Societe and Schutz patents. Of course these charges [sic: changes?] are obvious in view of the applicants' invention. This [,] however, is improper and the applicants therefore object."

Appellants, in supporting that position, urge certain differences between their device described as a "tank" and the Société device which is termed a "tube." We take these differences as merely verbal.

Appellants also point to various internal structural modifications that must be made in Société in order to overcome the claimed differences. While we have considered all the arguments, we will discuss only the major ones here.

Appellants point to the fact that the claimed collection chamber is radially spaced inside the walls of the main air chamber while that of Société is outside. This difference is not convincing since Société discloses:

> " * * * The diameters of known fluid separators operating by centrifugal force are generally considerably greater than the diameter of the pipe through which gases or vapors actually flow. * * * "

Further, appellants have pointed to no results traceable to this feature which would indicate that it is other than an obvious matter of design choice.

Much discussion has been had by appellants and the examiner about the effect of the claim limitation:

> " * * * the cumulative cross-sectional area between said vanes being slightly more than the cross sectional area of said tube; * * * "

After careful analysis and discussion of flow paths, air pressure and velocity, the examiner concluded that this limitation:

> " * * * is therefore not found to patentably distinguish since even if it is assumed to state dimensional relationship different from Societe, it does not produce any different effect or result. * * * "

The gist of appellants' response is that:

> "In fluid systems the relationships of size and the positions of baffles are critical. The Patent Office has not shown that they are not critical."

We fail to see how such a general allegation in a brief can rebut the relationships between flow paths, air pressure and velocity stated by the examiner to

be the same herein as in Société. The examiner analyzed, with reference to the well-known Bernoulli principle,[2] the effect structural differences might have on the operation of appellants' device as compared to that of Société. Appellants do not challenge the statements as being incorrect, but assert that a reference by the examiner to the Bernoulli principle alone is not proper here. It was perhaps the best means available to the examiner of explaining the reasons for his conclusion of obviousness, and since unrebutted by factual evidence of any critical relationship in position or size, or of any difference in effect or result, we think the position of the examiner to be sound. Appellants have failed to show that the change in the vanes, the use of an inner rather than outer collection chamber and the use of a smaller output tube, for example, as compared to Société, result in a difference in function or give unexpected results. Such changes in design of the various features are no more than obvious variations consistent with the principles known in that art.

## II   The Combination

We see little merit in the objections to the combination of Altgelt, as showing the cap, and Schutz, as showing the venturi tube, with Société. As the board noted:

> " * * * Inclusion of a cap over the air inlet is urged by the Examiner to be no more than an additive feature of well known structure and purpose in such combinations as taught by Altgelt."

Although appellants contend the board erred in stating: "Appellants have presented no arguments indicating that these features are of particular significance to the particular separator structure shown," the present arguments are not well taken in view of appellants' reply brief before the board which stated: "Admittedly the cap is shown in Altgelt

---

2. Bernoulli's principle is defined as: " *Less pressure where the flow is faster.*' " Rogers, Physics for the Inquiring Mind, Princeton Univ. Press (1960), p. 160.

and a suction [a venturi tube] shown in Schutz." Appellants now urge that:

"* * * the cap necessitates that the air travels radially into the top of the tank and prevents air from directly axially entering the top of the tank.

"As to the vacuum inducing device at the dirt outlet, the structure claimed is very efficient and not shown in the prior art."

That description of what the cap does describes precisely what the cap in the air cleaner of Altgelt does. Contrary to appellants' contention, the vacuum inducing device *is* shown in the prior art.

We grant that Schutz does use his venturi in an alternative fashion, i. e., the exhaust and dust laden air inputs are reversed. The examiner in his answer pointed this out but stated:

"* * * Insofar as the operation of the aspirator is concerned it is immaterial which arrangement is used. All that is required is that the inlet for dirt laden gases be adjacent the throat (low pressure zone) of the venturi."

We agree, and also note that Schutz teaches his arrangement to be a six to ten-fold improvement over the suction available by the very arrangement which appellants use.

We are satisfied that the cap and venturi elements emphasized by appellants are obvious additions which are taught by the Schutz and Altgelt references to be useful as a matter of choice in the combination. No unexpected result stems from their use in the combination; the combination works as expected.

Our view of this controversy is not changed by the many variations in the argument that the structure is *novel*. In view of the above we affirm the decision of the Board of Appeals.

Affirmed.

SMITH, J., concurs in the result.