**In re Paul CHU, William Downs, John B. Doyle and Peter V. Smith.**

No. 95–1038.

United States Court of Appeals, Federal Circuit.

Sept. 14, 1995.

Daniel S. Kalka, McDermott Incorporated, argued for appellant. Of counsel was Peter C. Michalos, Notaro and Michalos P.C.

Nancy J. Linck, Office of Solicitor, Patent and Trademark Office, argued for appellee. With her on the brief were Albin F. Drost, Deputy Solicitor and Scott A. Chambers, Associate Solicitor. Of counsel was La Vonda R. De Witt.

Before RICH and NEWMAN, Circuit Judges, and SKELTON, Senior Circuit Judge.

RICH, Circuit Judge.

Paul Chu, William Downs, John B. Doyle, and Peter V. Smith (collectively Chu) appeal

the August 9, 1994 decision of the Board of Patent Appeals and Interferences (Board) of the United States Patent and Trademark Office (PTO) affirming the Examiner's final rejection of claims 1, 2, 12, and 14 of patent application Serial No. 07/593,546 (the '546 application).[1] We reverse.

## I. Background

### A. The Invention

Chu's invention relates to an apparatus used to control emissions, such as sulfur oxides ($SO_x$), oxides of nitrogen ($NO_x$), and particulates, such as fly ash, from fossil fuel boilers. Fig. 1 of the '546 application is reproduced below.

Figure 1

The apparatus includes a fossil fuel fired boiler 10 containing an economizer 12 which receives combustion flue gas therefrom. The flue gas is input via exhaust duct 14 to a fabric filter house or baghouse 16 where it is cleaned, as described in greater detail below. Ammoniacal compounds are also input to the baghouse 16 through duct 14 at point 18. Sorbent is input to the boiler 10 either upstream of the economizer 12 at point 20 or downstream of the economizer 12 at point 22 depending on the particular sorbent chosen. After exiting baghouse 16, the clean flue gas proceeds along duct 36 to heat transfer device 38 which lowers the exit gas temperature. The flue gas then exits along duct 40 to the stack 42 where it passes to the environment.

Fig. 2 of the '546 application is a partial cross section of baghouse 16.

Fig. 2

1. The rejections of the remaining pending claims were not appealed.

The baghouse 16 contains suitable fabric filters, such as filter bags 26. A selective catalytic reduction (SCR) catalyst 24, not shown in Fig. 2, is incorporated into the baghouse 16. The SCR catalyst 24 is located in the exhaust plenum of the baghouse 16, or, preferably, inside the filter bags 26.

Figs. 6–9 show alternative embodiments of apparatus for placement of the SCR catalyst 24 within each filter bag 26 of the baghouse 16. Fig. 6 is exemplary and is reproduced below.

Fig. 6

Fig. 6 shows a catalyst bed 44, or bag retainer, formed of concentric cylinders 46 and 48, each constructed of a porous material such as a perforated metal plate. The filter bag 26 encloses the bag retainer. The SCR catalyst 24 is placed in the space between cylinders 46 and 48. Flue gas flows up through the cylinders 46 and 48, as shown. The particulates and sorbent collect on the filter bags 26 to form filter cakes. To clean the filter bags 26 the '546 application discloses a pulse-jet cleaning system wherein a pulse of high-pressure air is blown into the bag retainer. The surface of each filter bag 26 is thereby cleaned and the filter cakes are discharged into a hopper 56.

Claim 1, the only independent claim at issue, recites:

1. An apparatus for controlling emissions of a fossil fuel fired boiler which produces flue gases containing $SO_x$, $NO_x$, and particulates, comprising:

a flue gas duct constructed so as to carry flue gases from a boiler to a stack for discharge;

a high-temperature pulse jet fabric filter house connected along the flue gas duct between the boiler and the stack constructed so as to remove particulate from the flue gas passing along the flue gas duct, said fabric filter house having a plurality of fabric filter bags contained therein with each of said fabric filter bags having a bag retainer situated therein;

a selective catalytic reduction catalyst positioned inside the bag retainer of each of said fabric filter bags in said filter house;

means for recovering heat connected along the flue gas duct downstream of said fabric filter house, said heat recovering means constructed so as to be heated by the flue gases in the flue gas duct;

means for injecting an ammoniacal compound into the flue gas duct upstream of said filter house; and

means for injecting sorbent into the flue gas duct upstream of the filter house whereby the sorbent reacts with $SO_x$, the particulates are removed in said fabric filter house, thus protecting the $NO_x$ reduction catalyst from fly ash erosion and $SO_x$ poisoning.

### B. *The Prosecution*

The Examiner rejected claims 1, 2, 12, and 14 under 35 U.S.C. § 103 (1988) as being unpatentable over U.S. Patent No. 4,871,522 issued to Doyle in view of U.S. Patent No. 4,874,586 issued to Szymanski et al. (Szymanski). The Examiner stated that Doyle discloses all elements of claim 1 but "fails to disclose a baghouse filters [sic] having a catalyst located within the filter, and is silent on specific baghouse filter design." The Examiner asserted, however, that Szymanski teaches "a baghouse filter similar to those of the instant claims" and that "[o]ne of ordinary skill in the art would have modified the [Doyle] apparatus to incorporate the baghouse filters of [Szymanski] to facilitate simultaneous removal of sulfur oxides and particulates on the filter and nitrogen oxides

through the catalytic bed, disposed within the filters."

In response to the rejection, Chu first argued that the subject application "claims the benefit of the filing date as a continuation-in-part of [the Doyle patent]" such that the use of the Doyle patent "as a reference should be limited only to the new matter claimed in the continuation-in-part application."

As to the merits of the rejection, Chu contended that Doyle teaches placing the SCR catalyst in a heat exchanger downstream from the fabric filter house. Chu also argued that Szymanski "adds nothing to the foregoing reference since it merely teaches ... incorporating an SCR catalyst into the filter fabric of a filter bag." Chu maintained that neither Doyle nor Szymanski teaches or suggests positioning the SCR catalyst inside the bag retainer of the filter bags as claimed. This feature is significant, according to Chu, because the bag retainers provide support and prevent the filter bags from collapsing during pulse-jet cleaning.

### C. The Board's Decision

The Board first addressed whether the Doyle patent is available as prior art against the '546 application. The Board concluded that "Doyle is available as a reference for its entire disclosure under 102(e)/103 as to the current application because it is the uncontroverted work of 'another' in this particular case." The Board reasoned that because the Doyle patent and the Chu application have different, albeit overlapping, inventive entities, the Doyle patent is necessarily the work of "another" as defined in 35 U.S.C. § 102(e) (1988) and therefore available as prior art. That Chu claimed the benefit of Doyle's earlier filing date by claiming continuation-in-part (CIP) status under 35 U.S.C. § 120 (1988) was found to be irrelevant, the Board stating that "an attempt to claim CIP status between applications which never shared the same inventive entity is unavailing as a means to overcome" a rejection under § 103.

As to the merits of the § 103 rejection, the Board agreed with the Examiner that Doyle discloses all the elements of independent claim 1 except an SCR catalyst positioned within a bag retainer. The Board found that Szymanski's relatively stiff meshed inner wall 32 is a bag retainer as that term would be understood by one of ordinary skill in the art. Thus, in Szymanski, the catalyst is located between the bag retainer 32 and the bag 30, whereas claim 1, by contrast, requires the catalyst to be "positioned inside the bag retainer."

The Board concluded that the change between situating the catalyst in between the bag and the bag retainer and within the bag retainer is a matter of "design choice" and affirmed the rejection of claim 1. As to dependent claims 2, 4, and 14, the Board held that as "appellants have not separately argued such claims with any reasonable degree of specificity apart from claim 1," those claims "will fall with claim 1." The rejection of claims 2, 4, and 14 was accordingly affirmed.

Chu appealed the Board's decision to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) (1988).

### II. Availability of Doyle as a Reference

#### A. Standard of Review

 Statutory interpretation is a question of law which we review de novo. *In re Kathawala*, 9 F.3d 942, 945, 28 USPQ2d 1785, 1786 (Fed.Cir.1993). In appeals from PTO rejections, the Board's findings are reviewed under the clearly erroneous standard. *In re Caveney*, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985).

#### B. Analysis

 The threshold issue in this case is whether the Doyle patent is available as prior art against Chu's claims. Chu maintains that the instant application should be afforded the Doyle patent filing date with respect to "the disclosure of the Doyle application" because the instant application claims to be a CIP of the Doyle patent. According to Chu, affording Chu's application this filing date would remove the Doyle patent as a reference. However, the Board found, and the PTO argues on appeal, that Chu is not entitled to the benefit of the Doyle patent filing

date because there is not the same inventive entity between the Doyle patent and the Chu application. We conclude that Doyle is a proper prior art reference, though not for the reasons advanced by the Board.

Section 104(b) of the Patent Law Amendments Act of 1984 struck the phrase "by the same inventor" from 35 U.S.C. § 120 and substituted therefor the phrase "which is filed by an inventor or inventors named in the previously filed application." Patent Law Amendments Act of 1984, Pub.L. No. 98–622, sec. 104(b), § 120, 98 Stat. 3383, 3385.

The legislative history of this amendment clearly explains its purpose.

> Subsection (b) of section 105[2] amends section 120 of the patent law to provide that an application can obtain the benefit of the filing date of an earlier application when not all inventors named in the joint application are the same as named in the earlier application. This permits greater latitude in filing "divisional" applications. For example, if the previously filed application named inventors A and B as the inventors, a later application by either A or B could be filed during the pendency of the previously filed application and claim benefit of the previously filed application.

130 Cong.Rec. 28065, 28071 (1984), H.R. 6286, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.C.C.A.N. 5827, 5835 (Section-by-Section Analysis: Patent Law Amendments of 1984).

The 1984 amendment to § 120 plainly allows continuation, divisional, and continuation-in-part applications to be filed and afforded the filing date of the parent application even though there is not complete identity of inventorship between the parent and subsequent applications. D. Chisum, *Patents* § 13.07 (1995). Thus, the Board erred in requiring complete identity of inventorship between the Doyle patent and the Chu application in order for Chu to have the benefit of the Doyle patent's filing date. There is overlap in the inventive entities of the Doyle patent and the Chu application, which, after the 1984 amendment, is all that is required in terms of inventorship or "inventive entity" to have the benefit of an earlier filing date. But this does not determine whether Chu is entitled to the Doyle date. There is another requirement.

■ It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112. 35 U.S.C. § 120. *Mendenhall v. Cedarapids Inc.,* 5 F.3d 1557, 1566, 28 USPQ2d 1081, 1088–89 (Fed.Cir.1993) ("A patentee cannot obtain the benefit of the filing date of an earlier application where the claims in issue could not have been made in the earlier application."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994); *see also Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1438, 221 USPQ 97, 106 (Fed.Cir.1984) (discussing filing dates of CIP applications).

■ Thus, Chu is entitled to the benefit of the Doyle patent filing date only if the Doyle patent discloses the subject matter now *claimed* by Chu. This, however, is admitted by Chu not to be the case. In fact, Chu states that "the invention as now claimed[ ] was not described in the [Doyle] patent." Specifically, Chu concedes that "nothing in Doyle suggests that SCR catalyst be placed inside the bag filter." Therefore, independent claim 1, which includes this limitation, and dependent claims 2, 4, and 14, are not supported by the Doyle patent disclosure. Accordingly, Chu cannot obtain the benefit of the Doyle patent filing date for these claims and the Doyle patent was properly relied on as prior art.

### III. *The Merits of the Rejection*

#### A. *Standard of Review*

■ Obviousness under section 103 is a question of law that we review de novo. *In re Donaldson Co.,* 16 F.3d 1189, 1192, 29 USPQ2d 1845, 1848 (Fed.Cir.1994) (in banc).

---

**2.** In the Congressional Record, the pertinent section is § 105(b). *See* 130 Cong.Rec. 28066 (1984). The same section, however, is listed as § 104(b) in United States Statutes at Large. *See* 98 Stat. at 3385.

What a reference teaches is a question of fact reviewed under the clearly erroneous standard. *In re Beattie*, 974 F.2d 1309, 1311, 24 USPQ2d 1040, 1041 (Fed.Cir.1992).

B. *Obviousness*

In a proper obviousness determination, "[w]hether the changes from the prior art are 'minor', . . . the changes must be evaluated in terms of the whole invention, including whether the prior art provides any teaching or suggestion to one of ordinary skill in the art to make the changes that would produce the patentee's . . . device." *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 935, 15 USPQ2d 1321, 1324 (Fed.Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990). This includes what could be characterized as simple changes, as in *In re Gordon*, 733 F.2d 900, 902, 221 USPQ 1125, 1127 (Fed.Cir.1984) (Although a prior art device could have been turned upside down, that did not make the modification obvious unless the prior art fairly suggested the desirability of turning the device upside down.).

"[W]here the prior art gives reason or motivation to make the claimed [invention] . . . the burden (and opportunity) then falls on an applicant to rebut that *prima facie* case. Such rebuttal or argument can consist of . . . any other argument or presentation of evidence that is pertinent." *In re Dillon*, 919 F.2d 688, 692–93, 16 USPQ2d 1897, 1901 (Fed.Cir.1990) (in banc), *cert. denied*, 500 U.S. 904, 111 S.Ct. 1682, 114 L.Ed.2d 77 (1991). After evidence or argument is submitted by the applicant in response to an obviousness rejection, "patentability is determined on the totality of the record, by a preponderance of evidence with due consideration to persuasiveness of the argument." *In re Oetiker*, 977 F.2d 1443, 1445, 24 USPQ2d 1443, 1444 (Fed.Cir.1992); *see In re Piasecki*, 745 F.2d 1468, 1471–72, 223 USPQ 785, 787 (Fed.Cir.1984) ("All evidence on the question of obviousness must be considered, both that supporting and that rebutting the prima facie case.").

C. *Analysis*

■ During prosecution, Chu proffered multiple reasons why placement of the SCR catalyst within the bag retainer is not merely a matter of "design choice." To support his reasoning, Chu supplied various technical articles discussing fabric filters and the stresses they undergo during pulse-jet cleaning. From this evidence, Chu contended that Szymanski does not "accommodate the frailties of the high temperature fabric" of the filter bag and therefore "one of ordinary skill in the art would not look favorably on the teachings of the Szymanski, et al patent." Accordingly, Chu concluded that one of ordinary skill in the art would not have been led to modify Szymanski from its teaching of situating the catalyst between two filter bags to placing the catalyst within the bag retainer, as claimed.

The Board concluded, however, that placement of the SCR catalyst in the bag retainer was a matter of "design choice" and that Chu's evidence and arguments to the contrary were unpersuasive because Chu's "specification is virtually silent on the matter of any purported advantage to locating the catalyst within the bag retainer" and "does not state that the claimed location of the catalyst 'inside the bag retainer' solves any particular problem or produces any unexpected result."

Because the Board was required to consider the totality of the record, the Board was not free to disregard the evidence and arguments presented by Chu in response to the obviousness rejection. Additionally, the Board erred in apparently requiring Chu's evidence and arguments responsive to the obviousness rejection to be within his specification in order to be considered. To require Chu to include evidence and arguments in the specification regarding whether placement of the SCR catalyst in the bag retainer was a matter of "design choice" would be to require patent applicants to divine the rejections the PTO will proffer when patent applications are filed.

■ Additionally, the cases the Board relied on do not support its position that evidence and arguments must be found in the specification to be considered in an obviousness determination. In each case, the appli-

cant failed to set forth *any* reasons why the differences between the claimed invention and the prior art would result in a different function or give unexpected results. *In re Rice,* 341 F.2d 309, 144 USPQ 476 (CCPA 1965) ("Appellants have failed to show that the change [in the claimed invention] as compared to [the reference], result in a difference in function or give unexpected results."); *In re Kuhle,* 526 F.2d 553, 555, 188 USPQ 7, 9 (CCPA 1975) ("Use of such means of electrical connection in lieu of those used in the references solves *no stated problem* and would be an obvious matter of design choice within the skill in the art." (emphasis added) (citations omitted)).

*In re Lundberg,* 253 F.2d 244, 117 USPQ 190 (CCPA 1958), relied on by the Board, is also unpersuasive. In that case, the applicant argued that its valve was distinguished from the prior art because it could be opened in either direction. The court found this argument to be unpersuasive because "that advantage is not disclosed in appellant's application" and "the reversible operation now proposed by appellant would require modifications which are not disclosed in the application." *Lundberg,* 253 F.2d at 247, 117 USPQ at 192. None of the arguments presented by Chu would require any change in the construction of the disclosed emission control apparatus.

We have found no cases supporting the position that a patent applicant's evidence and/or arguments traversing a § 103 rejection must be contained within the specification. There is no logical support for such a proposition as well, given that obviousness is determined by the totality of the record including, in some instances most significantly, the evidence and arguments proffered during the give-and-take of ex parte patent prosecution.

From the totality of the record, we hold that placement of the SCR catalyst within the bag retainer would not have been merely a matter of "design choice." First, there is no teaching or suggestion in the prior art that would lead one of ordinary skill in the art to modify the Szymanski structure to place the SCR catalyst within a bag retainer as opposed to between two filter bags as

disclosed in Szymanski. Next, Chu's technical evidence relating to the frailty of fabric filters during pulse-jet cleaning clearly counters the assertion that placement of the catalyst in the baghouse is merely a "design choice." Specifically, Chu's evidence regarding the violent "snapping" action during pulse-jet cleaning, the difficulty in stitching compartments including the capacity to withstand high temperatures, and problems encountered from variable path lengths due to settling of the catalyst particles in each compartment militates against a conclusion that placement of the SCR catalyst is merely a "design choice." *See In re Gal,* 980 F.2d 717, 25 USPQ2d 1076 (Fed.Cir.1992) (finding of "obvious design choice" precluded where the claimed structure and the function it performs are different from the prior art).

### IV. *Conclusion*

We therefore conclude that the subject matter of claim 1 would not have been obvious in view of Doyle and Szymanski. The rejection of independent claim 1, and necessarily of dependent claims 2, 4, and 14, is accordingly reversed.

**REVERSED.**