**PFIZER INC., Plaintiff,**

v.

**PERRIGO COMPANY and L. Perrigo Company, Defendants.**

**No. 95 Civ. 5072 (DC).**

United States District Court, S.D. New York.

Aug. 6, 1996.

Hopgood, Calimafde, Kalil & Judlowe by Stephen B. Judlowe, William G. Todd, Porter F. Fleming, New York City and Pfizer Inc. (Paul H. Ginsburg, Grover F. Fuller Jr., Arthur A. Silverstein, of counsel), New York City, for Plaintiff.

Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein by John G. Gilfillan III, Roseland, New Jersey and Price, Heneveld, Cooper, DeWitt & Litton by Randall G. Litton, James A. Mitchell, Barry C. Kane, Harold W. Reick, Grand Rapids, Michigan, for Defendants.

### *MEMORANDUM DECISION*

CHIN, District Judge.

In this action, Pfizer Inc. ("Pfizer") alleges that Perrigo Company and L. Perrigo Company (together, "Perrigo" or "defendants") infringed upon its patent and trade dress rights pertaining to its Plax® pre-brushing dental rinse product. Perrigo now moves for summary judgment on the patent infringement claims on the ground of patent invalidity. For the reasons discussed below, the motion is denied.

## BACKGROUND

In support of their motion, defendants argue that the patent on the Plax® formula, United States Patent No. 5,338,538 (the "'538 patent"), is invalid under a statutory bar that prohibits an inventor from patenting an invention that was "on sale" or "in public use" one year before the application for the patent was filed. *See* 35 U.S.C. § 102(b). Perrigo argues that an in-home taste test conducted by Pfizer in May–June 1992 constituted a public use occurring more than one year before the application for the patent at issue in this suit was filed.

Pfizer opposes the motion on two grounds. First, although the application that matured into the '538 patent was filed on June 18, 1993, Pfizer seeks to rely on an earlier application. An earlier application was submitted on behalf of Pfizer on July 31, 1991 and a second application was filed on June 10, 1992 (the "June 10, 1992 application" or the "parent application"). Pfizer argues that the '538 patent is entitled to the June 10, 1992 filing date of the parent application under 35 U.S.C. § 120. Second, Pfizer argues that the in-home taste test was not a public use within the meaning of the statute.

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record favoring the party opposing the motion such that a reasonable jury could find in that party's favor. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### 2. Burden of Proving Invalidity of Patent

Under 35 U.S.C. § 282, patents are presumed valid and the party challenging the patent bears the burden of establishing invalidity of the patent or of a particular claim of the patent. 35 U.S.C. § 282; *see Philip v. Mayer, Rothkopf Indus., Inc.*, 635 F.2d 1056, 1060 (2d Cir.1980); *see also Ralston Purina Co. v. Far–Mar–Co, Inc.*, 772 F.2d 1570, 1573 (Fed.Cir.1985); *accord Therma–Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 992 (Fed. Cir.1995) (citation omitted). The party disputing a patent's validity must prove invalidity by clear and convincing evidence. *Ralston Purina*, 772 F.2d at 1574 (citations omitted).

Perrigo argues that the '538 patent is invalid under 35 U.S.C. § 102(b) because the product was in public use more than one year before the application for the patent was filed. Under section 102(b), "A person shall be entitled to a patent unless ... the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States...." 35 U.S.C. § 102(b).

Pfizer argues that the '538 patent is entitled to the filing date of the patent application, June 10, 1992, under 35 U.S.C. § 120, which provides that a patent application will be deemed filed on the date that an earlier application was filed if certain requirements are satisfied.

### 3. Effective Date of Application for the '538 Patent

Section 120, entitled "Benefit of earlier filing date in the United States," provides that:

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States ... which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the

first application and if it contains or is amended to contain a specific reference to the earlier filed application.

35 U.S.C. § 120.

Thus, a patent application will receive the benefit of a parent application's earlier filing date if: (1) the applications are submitted by the same inventor or inventors; (2) the applications were co-pending, meaning that the second application was filed while the first application was still pending; (3) the later application contains a specific reference to the prior application; and (4) the prior application disclosed the invention in the manner required by 35 U.S.C. § 112. *See* 35 U.S.C. § 120; 3 Ernest B. Lipscomb III, Walker on Patents § 9:10, at 28 (1985).

■ Here, the first three requirements have been satisfied. First, although the June 18, 1993 application added an additional inventor to the two named in the June 10, 1992 application, complete identity of inventors is not required where there is some overlap of inventorship. *See In re Chu,* 66 F.3d 292, 297 (Fed.Cir.1995). Second, the two applications were co-pending because the '538 patent application was filed on June 18, 1993 and the parent application was "abandoned" on September 15, 1993. Third, the June 18, 1993 application makes specific reference to the parent application. (*See* Pl.Exh. A, col. 1, lines 8–9).

Pfizer and Perrigo disagree as to whether the disclosure contained in the June 10, 1992 application adequately supports the invention described in the June 18, 1993 application.

Perrigo argues that, as a matter of law, the description contained in the parent application is inadequate to support the claims contained in the June 18, 1993 application because the latter application limited the pH levels more specifically than the prior application did. The pH level of the Plax® product affects the "stability" of the product at temperatures near freezing—when the product is exposed to cold temperatures, such as during shipment, it may experience crystallization or flocculation, which means that the ingredients begin to fall out of the mixture.

## A. *The Written Description Requirement*

A continuation-in-part application will be entitled to the benefit of an earlier filing date only if the parent application contained a specification of the invention as prescribed by section 112. 35 U.S.C. § 120. Under section 112,

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112.

Thus, as the Federal Circuit has explained:

A claim in a CIP [continuation-in-part] application is entitled to the filing date of the parent application when the claimed invention is described in the parent application in a manner that satisfies, inter alia, the description requirement of 35 U.S.C. § 112.

*Therma–Tru Corp.,* 44 F.3d at 992. In addition, the application must include "claims," which define and limit the subject matter of the invention. *See Eagle Comptronics, Inc. v. Tanner Elec. Sys. Technology, Inc.,* 222 U.S.P.Q. 170, 171 (N.D.N.Y.1983).

■ Whether the section 102(b) bar to patentability applies "is a question of law to be determined based upon underlying factual determinations." *Eiselstein v. Frank,* 52 F.3d 1035, 1038 (Fed.Cir.1995) (*citing United States Envtl. Prods. Inc. v. Westall,* 911 F.2d 713, 715 (Fed.Cir.1990)); *see Philip,* 635 F.2d at 1061 (validity of patent is question of law). Compliance with the "written description" requirement of section 112, however, is a question of fact to be decided on a case-by-case basis. *Eiselstein,* 52 F.3d at 1038; *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1562

(Fed.Cir.1991)· (discussing cases); *Ralston Purina*, 772 F.2d at 1575; *accord Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed.Cir.1994) (sufficiency of disclosure under 35 U.S.C. § 112 is question of law, but compliance with written description requirement is question of fact).

■ To satisfy the written description requirement, the descriptions contained in both applications need not be identical. *See* 3 Walker on Patents, *supra*, § 9:10, at 29. Rather, the description in the earlier application must support the claims in the later application such that one skilled in the art would know that the inventor had claimed the invention as of the earlier date. *See Eiselstein*, 52 F.3d at 1039 ("The test is whether the disclosure of the application relied upon reasonably conveys to a person skilled in the art that the inventor had possession of the claimed subject matter at the time of the earlier filing date.") (*citing Ralston Purina*, 772 F.2d at 1575); *accord Waldemar Link*, 32 F.3d at 559; *Vas–Cath*, 935 F.2d at 1562 ("Satisfaction of the description requirement insures that subject matter presented in the form of a claim subsequent to the filing date of the application was sufficiently disclosed at the time of filing so that the prima facie date of invention can fairly be held to be the filing date of the application.") (citation omitted).

### B. *The Descriptions Contained in the Applications Leading to the '538 Patent*

#### 1. *The Parent Application*

■ The parent application contained the following description of the pH content:

> The prebrushing composition of the invention *preferably has an alkaline pH ranging from about 7 to about 9, usually about 7 to 8.5*, since the rate of hydrolysis of the pyrophosphates increases on lower-

ing the pH. The alkaline pH is obtained by a proper balancing of ·the type and amount of pyrophosphates or by addition of an alkaline or acidic agent. For instance, benzoic acid may be used to lower the pH, usually in combination with sodium benzoate. When this combination is used, the benzoate anion concentration is gener·ally at a maximum of·about 1.5% by weight of the composition, and usually about 1.0% by weight.

> *In a preferred embodiment of the invention, the pH ranges from about 7.2 to about 7.9 to obtain a composition which is stable at lower temperatures such as about 30° F. The preferred pH is about 7.7.*

(*See* Pl.Exh. B) (emphasis added).

#### 2. *The '538 Patent Claims*

The '538 patent contains claims that describe the pH levels. Claims 1, 8, 16, and 23 state: "*which composition is free from flocculation or crystal formation after storing for seven days at about 35°F. or redissolves any flocculation or crystal formation at about 35°F. on increasing the temperature of the composition to room temperature ....*" (Pl.Exh. A Col. 5–6)· (emphasis added). Claims 1, 9, and 23 describe the composition as having "*a pH of about 7.2 to about 7.9;*" claims 2, 10, and 17 describe a pH of "*about 7.7.*" *Id.* (emphasis added).[1]

In light of the similarities between the descriptions of the preferred pH levels contained in the parent application and the claims asserted in the '538 patent, and the overall circumstances, a reasonable fact-finder could conclude that the written description requirement was satisfied. Although the claims in the '538 patent are· limited to pH levels between about 7.2 and about 7.9, and the parent application included a broader range of pH levels extending from about 7 to about 9, the parent application also stated

---

1. The '538 patent includes two examples stating that "[t]he pH of the prebrushing composition was 7.7." (*See* Pl.Exh. A Col. 4). The first example also states that: "On reducing the temperature of the above clear formulation to 35°F., flocculation occurred on the fourth day and persisted during storing for seven days at 35°F. No crystals formed. The flocculation dissolved on increasing the temperature of the formulation to room temperature." (Pl.Exh. A Col. 4). The second example states that: "On reducing the temperature of the above clear formulation to 35°F., flocculation occurred on the first day and persisted during storing for seven days at 35°F. No crystals formed. The flocculation dissolved on increasing the temperature of the formulation to room temperature." (Pl.Exh. A Col. 5).

**382**

that a "preferred embodiment" of the formula would contain a pH from about 7.2 to about 7.9. In addition, although the '538 patent describes more specifically the conditions under which crystallization can be avoided, the parent application stated that this "preferred embodiment" would be "stable" at temperatures near 30°F. Because a rational trier of fact could conclude that the disclosures contained in the parent application reasonably convey to a person skilled in the art that the inventors possessed the invention claimed in the '538 patent at the time the June 19, 1993 application was filed, Perrigo's motion for summary judgment is denied.

■ Perrigo also argues that the later filing date should apply because amendments to the June 18, 1993 application added new matter that was not contained in the parent application. The June 18, 1993 application was rejected, and amended, twice before it was finally accepted by the Patent and Trademark Office for patenting. Some of the statements regarding pH that are now at issue were added in the second amendment in response to a suggestion made by the Patent and Trademark Office. (*See* Def.Exh. B at 53) ("It is suggested that the claims recite and require the following: ... —clarity at 35°F. —, —freedom from flocculation and crystal formation—.").

■ The material added in the amendment will also be entitled to the filing date of the parent application if it is "inherent" in the disclosures made in the parent application. *See Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1438 (Fed.Cir.1984) ("If matter added through amendment to a C–I–P application is deemed inherent in whatever the original parent application discloses ... that matter also is entitled to the filing date of the original, parent application."); *see also Therma–Tru Corp.*, 44 F.3d at 993 ("[T]he later explicit description of an inherent property does not deprive the product of the benefit of the filing date of the earlier application.") (*citing Kennecott Corp. v. Kyocera Int'l Inc.*, 835 F.2d 1419, 1423 (Fed.Cir.1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 198 (1988)). Based on the record before me, it cannot be said that, as a matter of law, the material added in the

amendments was not "inherent" in the disclosures contained in the parent application.

**4. *Public use***

In light of my decision regarding the effective filing date, I need not reach the public use issue.

### CONCLUSION

For the reasons set forth above, Perrigo's motion for summary judgment on the issue of patent invalidity is denied.

SO ORDERED.