**In re Francis L. CONTE**

No. 02–1150.

United States Court of Appeals, Federal Circuit.

June 5, 2002.

Before MAYER, Chief Judge, LOURIE, and LINN, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Francis L. Conte appeals from the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences affirming the rejection of claims 1 and 4–10 of U.S. Patent Application Serial No. 08/331,851 as obvious under 35 U.S.C. § 103. *Ex parte Conte*, Appeal No.2000–2033, slip op. at 9 (Bd. Pat.App. & Inter. Sept. 20, 2001) (Paper No. 27) (*"Conte II"*). Because the Board's decision was supported by substantial evidence and is correct as a matter of law, we *affirm*.

## DISCUSSION

Mr. Conte is the named inventor of the '851 application, which relates to an insect swatter. In one embodiment of the invention, an elastic band is stretched between the proximal and distal ends of a gun. The band contracts and swats an insect when released by a trigger mechanism. The claims on appeal read as follows:

1. An insect swatter comprising:

an elongate rod having a proximal end for being hand-held, and an opposite distal end for being aimed at an insect;

an elastic lash in the form of an *annular rubber band* having a proximal end forming a *first loop* fixedly joined to said rod distal end, and also having an opposite distal end forming a *second loop,* said lash being sized for being elastically stretched from said rod distal end to adjacent said rod proximal end so that release of said lash distal end spontaneously contracts said lash for swatting said lash distal end against said insect;

a latch pivotally joined adjacent to said rod proximal end for releasably latching said lash distal end so that said second loop is positioned around said latch for being retained thereby; and

means pivotally joined adjacent to said latch for selectively releasing said latch to release said lash distal end for swatting said insect therewith.

. . .

4. A method of using the swatter of claim 1 comprising:

stretching said lash by pulling said distal end thereof generally parallel to said rod and adjacent to said rod proximal end;

latching said lash distal end to said latch; aiming said rod distal end at said insect; and

releasing said latch for spontaneously contracting said lash for swatting said insect with said distal end thereof.

5. A swatter according to claim 1 further comprising:

a gun handgrip fixedly joined to said rod proximal end;

said latch being pivotally joined to said handgrip; and

wherein said latch releasing means includes a trigger operatively joined to said latch for releasing said latch upon pulling said trigger.

6. A method of using the swatter of claim 5 comprising:

stretching said lash by pulling said distal end thereof generally parallel to said rod adjacent to said rod proximal end; latching said lash distal end to said latch;

gripping said handgrip to aim said rod distal end at said insect; and

pulling said trigger to release said latch to spontaneously contract said lash for swatting said insect.

7. A swatter according to claim 5 wherein:

said rod distal end includes a *keyhole slot;*

and said lash first loop is disposed through said keyhole for fixedly joining said lash to said rod.

8. A method of using the swatter of claim 7 comprising:

stretching said lash by pulling said lash second loop generally parallel to said rod and adjacent to said rod proximal end;

latching said lash second loop around said latch;

gripping said handgrip to aim said rod distal end at said insect; and

pulling said trigger to release said latch to spontaneously contract said lash for swatting said insect.

9. A swatter according to claim 7 wherein:

said latch extends upwardly from said handgrip; said *keyhole slot is open downwardly* in a direction opposite to said upward extension of said latch; and said lash is inclined upwardly from said keyhole slot to said latch when latched thereto.

10. A swatter according to claim 7 wherein:

said latch is pivotable between a cocked position wherein said latch extends generally perpendicularly to said rod for retaining said lash second loop thereon, and a fired position wherein said latch is inclined forwardly toward said rod distal end for allowing said lash second loop to slip off said latch for spontaneously contracting said lash; and

said trigger is operatively joined to said latch for releasing said latch to pivot from said cocked position thereof to said fired position thereof upon pulling said trigger.

Mr. Conte filed the '851 application on October 31, 1994. The examiner initially rejected the claims under 35 U.S.C. § 103 as being unpatentable over a combination of two references, a rejection that was later reversed by the Board. *Ex parte Conte,* Appeal No. 96–3971, slip op. at 4 (Bd. Pat.App. & Inter. Sept. 22, 1998) (Paper No. 11) (*"Conte I"*). Thereafter, the examiner rejected the claims under §§ 102 and 103 over new references, Caron and Kopp, and Watkins, which had previously been cited. In response, Conte petitioned the Director of the Patent and Trademark Office ("PTO") for mandamus to direct the examiner to allow the claims,

arguing that the examiner should not have reopened prosecution of the claims under 37 C.F.R. § 1.181. The Director denied that petition. Conte then challenged the rejection on the merits at the Board, which affirmed the examiner's rejection as to the claims now on appeal, claims 1 and 4–10, but reversed as to claims 11–15. The Board determined that the rejection was not precluded as *res judicata* by the Board's previous decision in *Conte I. Conte II* at 5. On the merits, the Board determined that the asserted references were analogous art and agreed with the examiner that it would have been obvious to combine the toy gun disclosed in Kopp for striking insects with a rubber band with the latch-releasing means taught by Caron. *Id.* at 6. The Board also affirmed the rejection of claims 7–10 over Kopp, Caron, and Watkins in view of the disclosure in Watkins of a keyhole slot allowing for ready replacement of the rubber band. *Id.* at 8. Conte timely appeals from the Board's decision; we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

We review the Board's legal conclusion of obviousness *de novo* and the factual underpinnings of its decision for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1315, 53 USPQ2d 1769, 1774 (Fed. Cir.2000). Whether a reference is analogous art is a question of fact and is therefore reviewed for substantial evidence. *In re Clay*, 966 F.2d 656, 658–59, 23 USPQ2d 1058, 1060 (Fed.Cir.1992). Under the substantial evidence standard, we will affirm the Board's factual determinations if they are based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gartside*, 203 F.3d at 1312, 53 USPQ2d at 1773 (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229–30, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

On appeal, Conte argues that the PTO violated 37 C.F.R. § 1.198 when it permitted the examiner to reopen prosecution despite having reversed the examiner's original rejections in *Conte I*. He also argues that the PTO erred in rejecting the claims over references previously of record, citing this court's decision in *In re Portola Packaging*, 110 F.3d 786, 42 USPQ2d 1295 (Fed.Cir.1997). He further contends that the asserted references are non-analogous art because (1) Kopp teaches "striking" insects, not killing them; (2) Caron relates only to toy guns, not to those that kill insects; and (3) Watkins similarly discloses no utility as an insect swatter, and its use as such would likely cause the insect to be squashed and leave an undesirable stain. On the merits, Conte asserts that the Board mischaracterized Kopp as having an annular band and a first and second loop as in claim 1. He also argues that the Board erred in concluding that it would have been obvious to combine Kopp and Caron because Caron discloses catapulting the elastic band away, whereas Kopp teaches that the band remains attached to the stock, and that a combination of those references would render them inoperable. Conte also disagrees with the Board's determination that the exact orientation of the keyhole slot of Watkins is a design choice. Finally, Conte argues that the Board did not consider objective evidence of the superiority of his invention over the prior art.

We agree with the PTO that we lack jurisdiction to consider Conte's appeal from the Director's decision denying Conte's petition concerning the examiner's action in reopening prosecution following *Conte I*. Our jurisdiction in appeals from the PTO is limited to appeals from the Board of Patent Appeals and Interferences under 28 U.S.C. § 1295(a)(4)(A) and decisions of the Director of the PTO or the

Trademark Trial and Appeal Board with respect to trademark applications under 28 U.S.C. § 1295(a)(4)(B). As neither of those sections confers jurisdiction over Conte's appeal from the Director's decision concerning the Rule 181 petition, we must decline to consider Conte's appeal on that issue. *See In re Makari,* 708 F.2d 709, 711, 218 USPQ 193, 194 (Fed.Cir.1983) ("We do not have jurisdiction to review decisions of the Commissioner on petitions.").

■ We also agree with the PTO that the Board did not err in concluding that the examiner, upon reopening prosecution, could consider the references of record. Conte's reliance on *Portola Packaging* is misplaced. That case concerned reexamination, which statutorily requires in the first instance a determination that the asserted references "raise[ ] a substantial new question of patentability affecting any claim of the patent concerned." 35 U.S.C. § 303(a) (1994). The field of references available to the examiner is not so constrained, however, for examination of claims following a Board reversal of an earlier rejection. Rather, "in rejecting claims for want of novelty or for obviousness, the examiner must cite the best references at his or her command." 37 C.F.R. § 1.104(c)(2); *see also Portola Packaging,* 110 F.3d at 790, 42 USPQ2d at 1299 (distinguishing between original prosecution and reexamination in determining that, in reexamination, the examiner may apply only references not previously cited against the claims). We therefore conclude that the Board did not err in affirming the examiner's post-*Conte I* rejections over references that had previously been of record.

■ Turning to the Board's decision on the merits, we conclude that substantial evidence supports the Board's factual findings and that its legal conclusion of obviousness is not contrary to law. We disagree with Conte's arguments that the asserted references are nonanalogous art. A prior art reference is analogous if it is from the same "field of endeavor," even if it addresses a different problem, or, if not within the same field, if the reference is "reasonably pertinent to the particular problem with which the inventor is involved." *See In re Clay,* 966 F.2d at 658–59, 23 USPQ2d at 1060. Kopp, Caron, and Watkins would have been viewed by a skilled artisan as being in the same field of endeavor as the claimed invention or at least reasonably pertinent to the problem of killing insects by swatting them with rubber bands. Kopp's teaching of "striking" an insect with an elastic band is clearly in the same field of endeavor as the claimed invention of "killing" an insect. U.S. Patent 1,009,531, col. 2, II. 73–4. Similarly, Caron's release mechanism for a device for striking any object with a rubber band is pertinent to addressing the problem of an appropriate release mechanism for a device that strikes insects with a rubber band. U.S. Patent 2,054,719, col. 2, II. 15–27. Watkins is also analogous art because it addresses the problem addressed in claims 7–10, *viz.,* attaching a rubber band to a mechanical gun and discharging that rubber band in the direction of an object. U.S. Patent 2,642,057, col. 4, I. 64 to I. 20, col. 5, I. 2. We disagree with Conte's argument that Watkins is not pertinent because the insect would be squashed and result in staining if the projectile shot from the gun of Watkins were accurately directed to hit an insect. Watkins describes an embodiment that shoots rubber bands rather than small projectiles, *id.,* and the effect of the snapping action on an insect by those rubber bands would necessarily be similar to that in the pending claims. Moreover, while squashing and staining may be undesirable, they hardly make the

reference not pertinent. We therefore conclude that substantial evidence supports the Board's decision that the cited references are analogous.

We also affirm the Board's conclusion that the subject matter of claims 1 and 4–10 would have been obvious in view of those references. Kopp teaches a toy gun for striking insects. '531 patent, col. 1, II. 14–15. It discloses a resilient band that is fastened to the end of the gun stock. *Id.* at col. 1, II. 34–45. The other end of the band is provided with a knob or knot and fastened to a releasing means at the other end of the stock. *Id.* Although Kopp does not explicitly teach an "annular" band as Conte has claimed, the term "band" itself connotes a ring-like structure that would inherently possess first and second loops as in the claimed invention, and Figure 1 of Kopp appears to show a band in the form of a ring. In any event, Caron also teaches an annular band having such loops. '719 patent, Figure 1. We therefore conclude that substantial evidence supports the Board's conclusion that the asserted references disclose the annular band and first and second loop limitations of claim 1.

We also conclude that the Board did not err in its determination that the subject matter of claims 1 and 4–6 would have been obvious over Kopp in view of Caron. Caron teaches the limitation in those claims of a lash that is released by a pivoting latch member adjacent to the proximal end of the rod and that engages the elastic band. '719 patent, col. 1, I. 35—col. 2, I. 14. In Caron, the latch is released by a trigger that discharges the rubber band from the toy gun. *Id.* at col. 1, II. 5–6. Conte argues that Caron teaches away from the claimed invention because the elastic band is launched from the gun rather than retained at the distal end.

We disagree. The discharge mechanism enabling a positive acting release of the band is irrelevant to whether the band released by that mechanism is ultimately retained or discharged at the end of the gun. We therefore conclude that the Board did not err in determining that one of ordinary skill in the art would have combined the release mechanism of Caron with the toy gun of Kopp.

We also affirm the Board's conclusion that the subject matter of claims 7–10 would have been obvious in view of the teaching of Watkins of a keyhole slot used to attach the rubber band to the front of the gun barrel. '057 patent, col. 3, II. 13–17. Although Watkins teaches a slot that opens upwardly rather than downwardly, as recited in Conte's claims 9 and 10, we agree with the Board that such a difference would have been a fairly insignificant design choice, as both types of slots would retain the rubber band. *See In re Rice,* 52 C.C.P.A. 998, 341 F.2d 309, 314, 144 USPQ 476, 480 (1965) (concluding that minor differences between the prior art and a claimed device may be a matter of design choice absent evidence to the contrary).

Finally, regarding Conte's arguments that the claims are patentable in light of secondary considerations of nonobviousness, we agree with the PTO that Conte has not demonstrated by objective evidence that his invention has superior "whipping" action over the prior art. In fact, the prior art appears to teach the same action. *See, e.g.,* '531 patent (Kopp), col. 2, II. 59–74 (describing the action of releasing the band so that it strikes an insect while contracting to its original, unstretched position).

We have considered Conte's remaining arguments and find them to be unpersuasive. Accordingly, we affirm the Board's

conclusion affirming the rejection of claims 1 and 4–10 as obvious under § 103.