**THERMA–TRU CORPORATION, Plaintiff–Appellant,**

v.

**PEACHTREE DOORS INC., Acme Sliding Door, Inc. d/b/a Edwards Wholesale, and Village Door, Defendants/Cross–Appellants.**

Nos. 92–1242, 92–1314.

United States Court of Appeals, Federal Circuit.

Jan. 4, 1995.

Rehearing Denied; Suggestion for Rehearing In Banc Declined April 14, 1995.

Ernie L. Brooks, Brooks & Kushman, Southfield, MI, argued, for plaintiff-appellant. With him on the brief, was Earl J. LaFontaine. Of counsel was Thomas A. Lewry.

Roland N. Smoot, Lyon & Lyon, Los Angeles, CA, argued, for defendants/cross-appellants. With him on the brief, were Michael R. Dinnin and Robert A. Dunn, Dinnin & Dunn, P.C., Troy, MI. Also on the brief, was John L. Taylor, Jr., Vincent, Chorey, Taylor & Feil, Atlanta, GA.

Before NEWMAN, MAYER, and PLAGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Therma–Tru Corporation appeals from the judgment of the United States District Court for the Eastern District of Michigan,[1] holding that Therma–Tru's United States Patent No. 4,550,540, invention of John Thorn, ("the '540 patent") is unenforceable due to inequitable conduct in the Patent and Trademark Office ("PTO"). Peachtree Doors, Acme Sliding Door, and Village Door (collectively "Peachtree") cross-appeal from the judgment that the '540 patent is not invalid, was infringed by Peachtree, and that the infringement was willful.

The judgment with respect to validity and infringement is affirmed. The holding of unenforceability is reversed, and the case is remanded for further proceedings.

## BACKGROUND

The invention described in the '540 patent is a door having a glass fiber-reinforced plas-

---

**1.** *Therma–Tru Corp. v. Peachtree Doors, Inc.,* No. 89–CV–73028–DT, 1992 WL 332100 (E.D.Mich. Feb. 25, 1992).

tic skin covering a wood frame with the internal spaces filled with insulating foam. Glass fiber-reinforced plastic doors had previously been made, but were not fully satisfactory substitutes for wood doors due to the presence of glass fibers at the surface of the plastic, whereby when the door was stained to simulate wood these surface fibers acted as wicks, drawing the stain below the surface and causing blemishes in the finish. Therma–Tru's patented construction remedied this disadvantage.

In accordance with the '540 patent, the surface of the door is shaped by compression-molding a sheet of glass fiber-reinforced plastic in a mold whose surface has been etched, in a simulated wood grain texture, to a predetermined depth between 0.003 and 0.009 inch. The etched pattern of the mold pushes the glass fibers below the surface of the plastic skin, thereby producing a glass fiber-reinforced door having a textured surface that is not subject to wicking when stained. The patent claims are directed to a product whose plastic surface is essentially devoid of glass fibers to a depth of at least 0.005 inch.

The Therma–Tru door achieved rapid commercial success. Peachtree arranged to have the same door manufactured for it by the same contractor employed by Therma–Tru using the same process. Therma–Tru charged Peachtree with willful patent infringement. Peachtree raised the defenses of patent invalidity on various grounds, noninfringement, and unenforceability due to inequitable conduct in the PTO.

The case was tried to a jury, except that the issue of inequitable conduct was decided by the judge on evidence that was presented at the trial. The jury returned special verdicts that Peachtree infringed claims 11 and 13 of the '540 patent, literally and under the doctrine of equivalents; that the '540 patent was not invalid; and that the infringement was willful. Concurrently, the trial judge held that the '540 patent was unenforceable due to inequitable conduct. On post-trial motions the court held that the jury's determinations were supported by substantial evidence, and would not be disturbed. This appeal and cross-appeal followed.

■ We review the jury verdicts to ascertain whether a reasonable jury, on the evidence adduced and on correct instructions as to the law, could have reached the verdict that was reached. *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1207, 23 USPQ2d 1284, 1288 (Fed.Cir.1992); *Sun Studs Inc. v. ATA Equipment Leasing Inc.*, 872 F.2d 978, 982, 10 USPQ2d 1338, 1341 (Fed.Cir.1989); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1571, 1 USPQ2d 1081, 1084–85 (Fed.Cir.1986).

■ We review the district court's determination of inequitable conduct on the abuse of discretion standard. The court's factual findings of material withholding, and intent to deceive or mislead the patent examiner, are reviewed for clear error. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (*en banc*), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

I

PATENT VALIDITY

Patent claim 11 is representative:

11. A door assembly comprising, in combination, a rectangular frame, a pair of opposed compression molded skins mounted on said frame, and a foamed core positioned within said frame between and adhered to said opposed compression molded skins, said skins each having an outer side and an inner side, a pair of vertically extending projections defined along each vertical edge of the inner side of each skin, said compression molded skins being integral,

including a molding resin and glass fibers, said outside of said skin being essentially devoid of glass fibers for a predetermined depth of at least 0.005 inch,

said outer side of said skin defining a textured pattern simulating the grain and texture of a wood door,

said textured pattern having a pattern depth between 0.003 inch and 0.009 inch, but not in excess of such predetermined depth.

## A

### *Obviousness*

■ Peachtree states that the jury should have found the '540 patent invalid for obviousness. As evidence Peachtree relied on the prosecution history in the PTO, showing the initial rejection by the examiner of Thorn's patent application on grounds of obviousness in terms of 35 U.S.C. § 103. In response to this rejection Thorn had submitted arguments, filed a continuation-in-part ("CIP") application, amended the claims to include the information that the plastic surface is devoid of glass fibers to a depth of at least 0.005 inch, and presented evidence of commercial success. The examiner then withdrew the rejection and issued the patent.

■ Peachtree argues that Thorn should have been required to demonstrate to the patent examiner that Therma–Tru's commercial doors contained no glass fibers within 0.005 inch of the surface, in order to have its arguments accepted and the patent granted. However, no such requirement was made by the examiner or is required as a matter of law. The burden of proving invalidity of an issued patent is on the challenger. *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1235, 9 USPQ2d 1913, 1919 (Fed.Cir.), *cert. denied*, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). This burden can not be shifted to the patentee by asserting that the patentee should have presented additional evidence in the patent office, or that the examiner should not have issued the patent on the record presented.

The jury was correctly instructed as to the law of obviousness, and that invalidity of an issued patent must be proved by clear and convincing evidence. We conclude, as did the district court, that there was substantial evidence to support the jury's verdict that invalidity on this ground had not been proved. *See Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 618, 225 USPQ 634, 636 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985).

## B

### *Public Use and On Sale*

■ Peachtree argues that the patented invention was in public use or on sale more than one year before Thorn's patent application was filed, and thus is invalid in terms of 35 U.S.C. § 102(b). The trade show event that Peachtree relies on occurred in January of 1983. The '540 patent issued from an application filed on March 29, 1984, which was a CIP of an application filed on January 7, 1983. If the claims of the CIP were entitled to the January 7, 1983 filing date, then the asserted bar could not arise. The jury was instructed to consider "the question of the filing date". In addition to testimony and argument, the jury was given the following written instruction:

> The filing date of the patent is the first date an application was filed that reasonably conveys to those in the art that Thorn had possession of all of the subject matter of claims 11 and 13.

This was essentially as set forth in the parties' joint proposed jury instructions. Peachtree does not state that it objected to this instruction. Nor is the instruction an incorrect statement of law.

■ A claim in a CIP application is entitled to the filing date of the parent application when the claimed invention is described in the parent specification in a manner that satisfies, inter alia, the description requirement of 35 U.S.C. § 112. *See Kennecott Corp. v. Kyocera Int'l Inc.*, 835 F.2d 1419, 1421, 5 USPQ2d 1194, 1196–97 (Fed.Cir. 1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 198 (1988). The evidence at trial was directed to the "at least 0.005 inch" depth of the fibers, which is the descriptive matter that was added in the CIP application. Witnesses for Therma–Tru testified that this described the product of the parent application, and that the product in the parent and the CIP were identical. The parent application stated that the textured pattern of the mold had a depth between 0.003 and 0.009 inch; witnesses testified that this depth of the mold pattern inherently and necessarily pushed the glass fibers at least 0.005 inch below the surface. Therma–Tru

testified that the numerical value of 0.005 inch was included in the CIP in order to quantify the difference from the prior art, and that it did not change the invention that was disclosed in the parent application.

■ As discussed in *Kennecott,* the later explicit description of an inherent property does not deprive the product of the benefit of the filing date of the earlier application. 835 F.2d at 1423, 5 USPQ2d at 1197–98. Although Peachtree now argues that the standard for inherency was not met, referring to the discussion in *Kennecott* of the standard used in patent interference proceedings, Peachtree can not complain on appeal that the evidence should have been examined on a different basis and placement of the burden of proof than was proposed to the jury. Further, there was no error in the jury instructions. The issue does not warrant retrial or reversal.

We agree with the district court that there was substantial evidence whereby a reasonable jury could have found that the patentee was entitled to the filing date of the parent application. The verdict that the patent was not invalid on this ground is sustained.

C

*Best Mode*

■ The patent specification must "set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. The purpose is to assure that inventors do not conceal the best mode known to them at the time of filing, while disclosing an inferior mode to the public. Peachtree challenged the validity of the '540 patent on this ground.

■ Whether the patentee does not satisfy the best mode provision of § 112 is a question of fact, *DeGeorge v. Bernier,* 768 F.2d 1318, 1324, 226 USPQ 758, 763 (Fed.Cir. 1985), to be established by clear and convincing evidence, *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1517, 220 USPQ 929, 939–40 (Fed.Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). The jury verdict based thereon is reviewed to determine whether there was evidence of sufficient quality and weight whereby a reasonable jury could have reached its verdict, the reviewing tribunal drawing all factual inferences in favor of the verdict that was reached.

The jury was instructed that violation of the best mode required concealment, and was also instructed to determine whether the formula for the plastic composition was part of Thorn's invention:

You must determine whether Mr. Thorn, at the time he filed his patent application, contemplated that a particular formula for the compression molded skins was the best mode for the door. If he did, you must determine whether the best mode of the door was concealed by him in his application.

In that determination, you should determine whether the particular formula for the compression molded skins is part of the claimed invention. It is concealment of the best mode of practicing the claimed invention that the obligation is designed to prohibit. Every detail is not required to be disclosed.

Thorn had testified that the formula for the plastic composition was within the skill of the art and not subject to any specific best formula, that known formulas for these plastic compositions were included in the specification, and that the formula of the plastic was not part of what he had invented. It was undisputed that both Therma–Tru and Peachtree went to a commercial supplier for the plastic composition that formed the skin of the doors. The supplier testified at the trial, and stated that there was "nothing special" about the composition.

The burden of proving that Thorn knew of and concealed a better mode than he disclosed was upon Peachtree. Thorn and others were extensively examined at trial on this point. We agree with the district court that there was substantial evidence to support the jury's rejection of the best mode ground of invalidity.

D

*Enablement*

After the jury's verdict that invalidity had not been proved, Peachtree moved for judg-

ment n.o.v. on the issue, inter alia, of enablement. The question had been litigated at trial, directed to enablement of a resin surface devoid of glass fibers to at least 0.005 inch. Peachtree had argued that even if the 0.005 inch depth were met by the glass fibers, there were some "filaments" that lay closer to the surface. Witnesses debated the difference between "fibers" and "filaments", offering conflicting views. Both parties appear to have believed that a jury finding on this aspect was subsumed in the verdict that invalidity had not been proved.

However, the district court stated, in response to the post-trial motions, that the question of enablement had been decided by the court in its ruling that the Thorn patent was unenforceable for inequitable conduct in the PTO. We turn to the district court's ruling on inequitable conduct.

## II

### INEQUITABLE CONDUCT

Counsel for both sides told the district court that the court must decide the issue of inequitable conduct. Thus, after the jury had been charged on the issues of validity and infringement and had retired to deliberate, the district judge placed his decision on inequitable conduct in a sealed envelope and left it with the clerk. After the jury returned its verdict, the judge's decision on inequitable conduct was opened and read by the clerk, as follows:

> The clear & convincing evidence leads this court to find that material information was withheld & this information was intentionally withheld.[*]

> Therefore the patent is unenforceable.

---

[*] More than negligence or gross negligence.

The trial judge appears to have viewed himself as a jury of one, finding the facts of materiality and intent and applying the law to those facts. No explanatory opinion discussing these findings, or their discretionary balancing, was offered.

## A

### *Materiality*

The district court stated, in its memorandum denying the various post-trial motions, that its ruling of inequitable conduct was based on the question of enablement. From this statement and the court's findings and conclusion at the time of the jury verdict, it appears that the information that the court found material to patentability, and intentionally withheld from the examiner, was an enabling disclosure of how to make a compression molded door skin essentially devoid of glass fibers to a depth of at least 0.005 inch.

The specification of the '540 patent states that the process of compression molding, in a mold etched to a depth between 0.003 and 0.009 inch, results in a door skin essentially devoid of glass fibers to a depth of at least 0.005 inch. The court did not explain what information was found to have been withheld. Indeed, Peachtree's vice president of research and development testified that the Peachtree door was produced by the same process as described in the '540 patent specification, by compression molding in a mold etched to a depth of 0.0045 ± 0.0005 inch. The witness did not suggest what information was withheld from the patent examiner. Nor has Peachtree directed us to any other evidence concerning withheld information.

In addition, the district court's finding that the 0.005 inch limitation was not enabled is in apparent conflict with the jury's findings with respect to validity and infringement. It was not disputed that Peachtree's doors were made by the process described in the '540 patent; the jury found that the Peachtree doors met the 0.005 inch limitation of the claims (in finding infringement) and also that the best mode was described (in finding validity). Although the district court stated that "the court served as factfinder" with respect to materiality and intent, the court may not make findings in conflict with those of the jury. In *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959) the Court explained that when equitable claims are joined with legal claims and have factual

questions in common, the judge's determination of the equitable claims can not deprive the litigants of their right to a jury trial on factual questions. 359 U.S. at 510, 79 S.Ct. at 956. The Sixth Circuit, in which this case was tried, has explained:

> When " 'a party has a right to a jury trial on an issue involved in a legal claim, the judge is ... bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim.' "

*Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir.1988) (quoting *Kitchen v. Chippewa Valley Schools,* 825 F.2d 1004, 1014 (6th Cir. 1987) (quoting *Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983))).

■ In this case the determinations by the jury and the judge were simultaneous. However, this does not authorize judicial findings independent of and contrary to the facts found by the jury in reaching its verdict. The circuits are in general accord on this historic principle. *E.g., Dybczak v. Tuskegee Institute,* 737 F.2d 1524, 1526–27 (11th Cir.1984) ("It is well-settled that where claims at law and equity are joined and the legal claims are tried separately by a jury, the jury's verdict operates as a finding of fact binding on the trial court in its determination of the equitable claims."), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985); *Caputo v. U.S. Lines Co.,* 311 F.2d 413, 416 (2d Cir.) ("Inconsistent determinations based upon the same evidence at the same trial are logically impossible. The court must follow the verdict of the jury."), *cert. denied,* 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963); *Garza v. City of Omaha,* 814 F.2d 553, 557 (8th Cir.1987) ("Given the preclusive effect of collateral estoppel which must be accorded to the jury verdict, the district court was without power to render a judgment on the Title VII claim inconsistent with the jury's finding of discriminatory intent and custom on the § 193 claim."); *GTE Sylvania Inc. v. Continental T.V., Inc.,* 537 F.2d 980, 986 n. 7 (9th Cir.1976) ("We therefore rely upon the findings of the jury if they appear to be inconsistent with the findings of the trial judge."), *aff'd,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); *Brownlee v. Yellow Freight Sys., Inc.,* 921 F.2d 745, 749 (8th Cir.1990) ("Where legal and equitable claims are joined in the same complaint, and where there are common issues of fact, the normal practice is to try both claims to a jury."); *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1443 (10th Cir.1988) ("[T]he court is bound by the jury's determination of factual issues common to both the legal and equitable claims.").

Thus, in addition to the absence of evidentiary support for the court's ruling that material information was withheld, the court appears to have followed an incorrect methodology, for the court remarked in its memorandum opinion that:

> The court may not determine the credibility of witnesses or substitute its choice for that of the jury between conflicting elements of the evidence.[3]

[3] An exception to this rule is made for the issue of inequitable conduct, which is for the court to decide.

Slip op. at 5 & n. 3. The avoidance of conflict with the implied findings underlying the jury verdicts of infringement and validity weighs against the district court's finding that material information was withheld.

## B

### *Intent*

■ The district court, in the only explanation of its finding of intent, stated "more than negligence or gross negligence". However, intent as an essential predicate to patent unenforceability does not mean that the inventor intended to do what he did in patent prosecution; it means that the inventor intended to deceive or mislead the examiner into granting the patent.

Peachtree argues that the inventor Thorn knew, and did not mention in his patent application, that the compression molding process produced a surface layer some of whose fibers were closer to the surface than 0.005 inch. The evidence of the detailed structure of the door skin consisted of photomicrographs obtained by Peachtree for this litigation. There was no evidence that Thorn knew, at the time of filing the patent applica-

tion, the microscopic information that was later obtained for litigation purposes. There can not have been culpable intent in withholding information that the inventor did not have. In addition, there was conflicting evidence at trial concerning what the photomicrographs showed.

Peachtree refers to no evidence whatsoever of intent to deceive or mislead, but argues that intent to deceive or mislead should be inferred from the fact that certain information was not provided to the examiner. That theory of inferential culpability was definitively laid to rest in *Kingsdown*, wherein this court *en banc* held that invalidity for inequitable conduct requires a showing, by clear and convincing evidence, of intent to deceive or mislead the patent examiner into granting the patent. 863 F.2d at 876, 9 USPQ2d at 1392.

■ Indeed, failure to meet a requirement of patentability, such as enablement, does not of itself establish the intent element of inequitable conduct. *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533, 20 USPQ2d 1300, 1304 (Fed.Cir.1991). It is necessary that the failure be based on affirmative material withholding for the purpose of misleading or deceiving the patent examiner. *Id.* We have been directed to no evidence of intent to mislead or deceive, and must conclude that the district court's finding on the issue of intent is clearly erroneous.

### C

*The Ruling of Inequitable Conduct*

■ The ruling of inequitable conduct required factual findings of both materiality and intent, neither of which has been sustained. A discretionary ruling will not be upheld if the trial court's decision is based upon findings of fact that are clearly erroneous, or a misapplication or misinterpretation of law, or if the ruling evidences a clear error of judgment. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 541, 16 USPQ2d 1622, 1624 (Fed.Cir.1990), *cert. denied*, 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991). In view of the clearly erroneous findings of intent and materiality, the ruling of inequitable conduct can not stand. *Kings-*

*down*, 863 F.2d at 876, 9 USPQ2d at 1392. The judgment of unenforceability based on inequitable conduct is reversed.

### III

### INFRINGEMENT

#### A

■ The inventor Thorn, working with a chart showing each claim clause, read each clause on a Peachtree door that had been sawn to show its cross-section.

The infringement analysis again centered on the claim limitations of the "at least 0.005 inch" depth of the glass fibers, and the molding pattern depth of between 0.003 and 0.009 inch. The applicability of these limitations to the accused doors was the subject of testimony and physical evidence. Witnesses testified that the depth of the etching pushes the glass fibers below the surface, and that since the etching on the Peachtree doors was 0.0045 ± 0.0005 inch, infringement by the Peachtree door was made out. Peachtree argues that the jury's verdict of literal infringement should not stand because Therma–Tru did not prove that the accused doors have a surface essentially free of glass fibers to a depth of 0.005 inch. The parties disputed the selection and interpretation of photomicrographs that were introduced by Peachtree to show that there were "filaments" closer to the surface that 0.005 inch.

We conclude, as did the district court, that there was substantial evidence whereby a reasonable jury could have found infringement. Since literal infringement could have been found by the jury, we do not reach the issue of infringement by equivalency. The jury verdict must be sustained.

#### B

■ On the question of willfulness, the jury instruction included the following:

To prove Peachtree's conduct was willful, Therma–Tru must prove by clear and convincing evidence that Peachtree proceeded with conscious or deliberate disregard to Therma–Tru's patent....

One factor to consider with respect to Peachtree's state of mind is whether Peachtree obtained and followed competent legal advice from counsel after having actual notice of Therma–Tru's patent and before beginning the manufacture or sale of the newport door. ·

No error was assigned to those instructions. Peachtree admitted that it copied Therma–Tru's doors by employing the same contractor who made the doors for Therma–Tru, and that it continued to do so after receiving notice of infringement. In defense, Peachtree offered its attorney's letters stating that the '540 patent is invalid or unenforceable. Peachtree's president was cross-examined as to the credence he gave to these letters. A reasonable jury could have believed that the attorney's letters were written in anticipation of litigation, as Therma–Tru had argued, and that the president's decision to proceed with and continue the accused activity met the requirements of willfulness. The jury's verdict that the infringement was willful must be sustained.

### Summary

The judgment is affirmed on the issues of validity and infringement. The judgment of unenforceability is reversed. The case is remanded for further proceedings consistent herewith.

### Costs

Costs to Therma–Tru. Fed.R.App.P. 39.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*

MAYER, Circuit Judge, concurring in part and dissenting in part.

I would affirm the district court's judgment of unenforceability of the '540 patent. The evidence of record supports its conclusion that Therma–Tru committed inequitable conduct.

This court "reviews judgments not opinions, as we have previously stated on numerous occasions." *Milliken Research Corp. v. Dan River, Inc.,* 739 F.2d 587, 593 (Fed.Cir. 1984). A judgment should be upheld if any grounds to sustain the judgment find support in the record. *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 814 (Fed.Cir.1990) ("An appellate court need not close its eyes to the record where ... there is a way clearly open to affirm the district court's action.").

A party attempting to prove inequitable conduct must show that material information was withheld from the PTO with the intent to deceive or mislead the examiner. *LaBounty Mfg., Inc. v. United States International Trade Comm'n,* 958 F.2d 1066, 1070 (Fed. Cir.1992). Here, the trial court, to whom the inequitable conduct issue was reserved by consent of the parties, found that "clear & convincing evidence" established that "material information was withheld" intentionally from the examiner during prosecution of the patent applications. The question is whether these findings of materiality and intent have a sufficient basis in the record, keeping in mind that we should not disturb them unless we have a definite and firm conviction that a mistake has been committed. *Verdegaal Bros., Inc. v. Union Oil Co.,* 750 F.2d 947, 952 (Fed.Cir.1984). We review the district court's determination of inequitable conduct for abuse of discretion, and its factual findings for clear error. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 876 (Fed.Cir.1988) (*en banc*).

The record demonstrates that the finding of materiality is not clearly erroneous. Materiality is established by a showing that a reasonable examiner is substantially likely to consider the information "important in deciding whether to allow the application to issue as a patent." *LaBounty,* 958 F.2d at 1074 (quoting 37 C.F.R. § 1.56(a) (1991)). Here, Therma–Tru failed to disclose material prior art and misrepresented material information about the prior art to the PTO. For example, Thorn and Therma–Tru did not advise the examiner that compression molded skins had been used by Owens–Corning Fiberglass in doors that were sold and described in printed publications in the early 1970s, while arguing that the prior art skins were not compression molded. They also did not advise the examiner that General Tire & Rubber Company had proposed the use of compression molded skins in making a plastic

entry door in October 1980. This information obviously would have been important in deciding whether the patent should issue.

Nor is the finding of intent clearly erroneous. The district court recognized that intent is a required element of inequitable conduct, and that more than negligence or gross negligence is required. There is evidence in the record that Therma–Tru knowingly withheld highly material information about prior art from the PTO, as discussed above. The elements of materiality and intent "must be balanced against each other, and if one is particularly strong, a lesser degree of the other may suffice to show inequitable conduct." *Under Sea Indus., Inc. v. Dacor Corp.,* 833 F.2d 1551, 1559 (Fed.Cir.1987). It is often necessary to prove intent, direct evidence being unavailable, by "a showing of acts the natural consequences of which are presumably intended by the actor." *Merck & Co. v. Danbury Pharmacal, Inc.,* 873 F.2d 1418, 1422 (Fed. Cir.1989) (quoting *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1151 (Fed.Cir.1983)). Even when there is conflicting evidence about intent, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

That the district court may not have fully articulated its findings does not warrant reversal. *See Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.,* 984 F.2d 1182, 1189 (Fed. Cir.1993) ("To reach the conclusion of inequitable conduct under the law, ... the district court necessarily had to have found an intent to deceive the PTO."); *cf. Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540 (Fed. Cir.1983). The court made factual findings that the omissions were material and that petitioner intentionally withheld them from the PTO. The court's failure to reference the record in its opinion does not render the decision defective or permit the inference that it ignored relevant evidence. *See Medtronic, Inc. v. Daig Corp.,* 789 F.2d 903, 906 (Fed.Cir.1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."). Fur-

thermore, because there is sufficient evidence in the record to sustain the judgment based on intentional withholding of material prior art, the judgment does not conflict with the jury's factual findings, and thus the jury's verdict on validity does not impinge on the enforceability issue. *See Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1213 (Fed.Cir.1987) ("The simple fact is that a patent may be valid and yet be rendered unenforceable for misuse or inequitable conduct."). There was no reversible error in the district court's findings and no abuse of discretion in its judgment.