**SOUTHERN CLAY PRODUCTS, INC. Plaintiff–Appellee,**

v.

**UNITED CATALYSTS, INC. Defendant–Appellant.**

No. 01–1382.

United States Court of Appeals, Federal Circuit.

July 26, 2002.

Rehearing and Rehearing En Banc Denied Sept. 4, 2002.

Mayer, Chief Judge, dissented and filed opinion.

Before MAYER, Chief Judge, CLEVENGER, and GAJARSA, Circuit Judges.

Opinion for the court filed by Circuit Judge GAJARSA. Dissenting opinion filed by Chief Judge MAYER.

United Catalysts, Inc. ("United") appeals a district court grant of judgment as a matter of law ("JMOL") that two patents owned by Southern Clay Products, Inc. ("Southern Clay"), are valid, enforceable and infringed. *Southern Clay Prods., Inc. v. United Catalysts, Inc.,* No. H–98–1756

(S.D.Tex. Feb.2, 2001) (order granting JMOL). With respect to U.S. Patent No. 4,664,842 ("the '842 patent") this court holds that the district court erred as a matter of law, and the patent is invalid as a matter of law because it is anticipated. With respect to U.S. Patent No. 5,110,501 ("the '501 patent") we vacate the district court's grant of JMOL for Southern Clay that the patent is not invalid and infringed and remand to the district court for further proceedings. Therefore we *reverse-in-part, vacate-in-part* and *remand.*

## BACKGROUND

The '842 and '501 patents, relate to organophilic clays, known as "organoclays." Since the 1950s the process for making organoclays has involved slurrying a hydrophilic, smectite-type clay in water, treating the slurry to remove impurities, reacting the slurry with a quaternary ammonium compound, and finally separating the resulting organophilic clay and drying it. The effect of the reaction ·with the quaternary ammonium compound is to change the clay so that it is compatible with organic solvents. In order to improve the reaction with the quaternary ammonium compound, it is beneficial to reduce the particle size of the clays prior to reacting them.

This size reduction benefit has been the subject of many patents. In 1976, a British patent GB1439828 ("Laporte") was published, disclosing a process for manufacturing organoclays with a reduced particle size by subjecting the clay to "high shear" conditions before reacting it with the quaternary ammonium compound. In addition, U.S. Patent No. 3,951,850 ("Clocker") issued in 1976, teaches the dispersion of clay particles. The Clocker patent cites to U.S. Patent No. 3,348,778 ("Cohn") that teaches the use of a Manton–Gaulin mill/homogenizer ("Manton–Gaulin") as a method for breaking down the particles.

Southern Clay filed. a patent application claiming improvements in the manufacture of organoclays through the use of a Manton–Gaulin to process the clay before it is reacted with the quaternary ammonium compound. The '842 and '501 patents are the progeny of that now-abandoned application. The '842 patent claims the use of the Manton–Gaulin in functional terms, while the '501 patent claims it specifically. Southern Clay asserted five of the six claims of the '842 patent against United. The asserted claims of the '842 patent recite:

1. In a process for manufacture or [sic] an organoclay by reacting a smectiti[sic]-type clay with a higher alkylcontaining quaternary ammonium compound; the improvement enabling enhancement of the gelling properties of said clay, comprising:

subjecting the clay as a pumpable slurry, to high speed fluid shear and substantial average particle size reduction, prior to the said reaction thereof with said ammonium compound, by passing said slurry through a narrow gap across which a pressure differential is maintained causing the slurry at high pressure entering the gap to undergo a rapid increase in velocity with a corresponding decrease in pressure, followed by cavitation as the velocity decreases beyond the gap.

2. A method in accordance with claim 1, further including impacting the clay at a high velocity beyond said gap, against a hard surface to effect further shearing and comminution of said clay particles.

3. A method in accordance with claim 1, wherein the said pressure differential is in the range of 1,000 to 8,000 psig.

5. A method in accordance with claim 1, wherein said shearing and impacting is effected in a homogenizing mill.

6. A method in accordance with claim 1, wherein said pumpable slurry includes less than 25% by weight of solids.

Claims 1 and 2 of the '501 patent read:

1. A process for preparing an organophilic clay gellant comprising:

(a) subjecting a slurry of smectite-type clay having a cation exchange capacity of at least 75 milliequivalents per 100 grams of clay to high shear conditions achieved by passing the slurry at least one time through a Manton–Gaulin homogenizer whereby clay agglomerates are separated, said smectite-type clay having been previously treated to remove non-clay impurities;

(b) reacting the smectite-type clay with organic cation whereby at least some of the cation exchange sites of the smectite-type clay are substituted with organic cation thereby forming an organophilic clay gellant;

(c) separating the organophilic clay gellant; and

(d) drying the organophilic clay gellant.

2. The process of claim 1 in which the high shear conditions are achieved by passing the slurry at least one time through a Manton–Gaulin homogenizer operating at from 1000 to 8000 psig.

Southern Clay brought suit against United alleging infringement of claims 1–3, 5 and 6 of the '842 patent and claims 1 and 2 of the '501 patent. United asserted that the patents were invalid and unenforceable. United also counterclaimed alleging violations of antitrust and state laws. United's organoclay manufacturing process uses a Manton–Gaulin, but only after it breaks up the clay particles by steam-treating the slurry, as taught by Clocker.

United moved for partial summary judgment regarding infringement, invalidity and unenforceability and Southern Clay moved for partial summary judgment regarding infringement. Although the magistrate judge recommended that the motions for summary judgment be denied because there were triable genuine issues of material fact, the district court judge did not rule on those motions.

During the pre-trial stage the parties filed motions regarding claim construction. The parties stipulated that two claim limitations were at issue: the language in the '842 patent "substantial average particle size reduction," and the language in the '501 patent "whereby clay agglomerates are separated." Only the construction of the first term is challenged on appeal. The district court agreed with Southern Clay that "substantial average particle size reduction" means a reduction in average particle size sufficient to accomplish an enhancement of the gelling properties of the organoclays. *Southern Clay Prods., Inc. v. United Catalysts, Inc.*, No. H–98–1756, slip op. at 5–9 (S.D.Tex. May 9, 2000) (claim construction order).

Before trial, the parties submitted a joint pretrial order outlining the issues for trial. They agreed that disputed issues of material fact remained with respect to infringement, invalidity and unenforceability.

The disputed issues of fact included whether the Clocker patent anticipated the claims of the patents at issue. United argued that Clocker incorporated the use of the Manton–Gaulin through its reference to Cohn, and in the alternative that Clocker inherently disclosed the Manton–Gaulin. A second disputed issue of fact was whether any of the claims at issue would have been obvious based on a combination of the Clocker, Cohn and Laporte patents as well as an article by Simon et al. entitled "Effects of Processing on the

Rheology of Thixotropic Suspensions," 50 J. Pharmaceutical Sciences 830 (1961) ("Simon"). A third disputed issue was whether Laporte and Simon were material prior art references withheld from the Patent and Trademark Office with intent to mislead thereby rendering the patents unenforceable for inequitable conduct. Finally, there was a factual dispute about whether Southern Clay had violated federal antitrust laws by procuring its patents through inequitable conduct and then asserting them against United, knowing that they were invalid and unenforceable. Outside of the jury's presence the parties outlined the issues that remained for the jury, both agreeing that the scope and content of the prior art as well as what the prior art taught were questions of fact that the jury must determine. The court accepted this assessment of the factual issues.

At trial Southern Clay presented its case in chief to the jury. It rested without making any motions for JMOL. At the close of the plaintiff's case United made several motions for JMOL, which the district court denied. At that time, however, United did not move for JMOL that the '842 patent was anticipated as a matter of law. Then, before United had the chance to present its case in chief, the district court *sua sponte* granted JMOL for Southern Clay on the issues of infringement, invalidity and enforceability. In response to those rulings, United was allowed to make a proffer without the presence of the jury of the evidence that it would have brought before the jury if had been allowed to do so. The court then allowed United to present evidence only on the issue of damages and to a limited extent on the issue of willfulness, because those were the only issues left for the jury. The jury subsequently found willful infringement of both patents and awarded Southern Clay $20.9 million in compensatory damages, which the court trebled.

United appeals the grant of JMOL of validity and enforceability, asserts that the district court erred in not finding the patents invalid as anticipated, and challenges the district court's claim construction. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

This court reviews a district court grant of JMOL *de novo*, reapplying the JMOL standard. *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1573, 35 USPQ2d 1840, 1841 (Fed.Cir.1995). Under Federal Rule of Civil Procedure 50, a court may grant JMOL against a party on a particular issue only when that party has been fully heard and only where there is no legally sufficient basis for a reasonable jury to find for that party on that issue. Fed.R.Civ.P. 50; *see also Allied Colloids*, 64 F.3d at 1572, 35 USPQ2d at 1841.

An issued patent is presumed valid and the burden is on the party challenging the validity of a patent to show that it is invalid by clear and convincing evidence. *Helifix Ltd. v. Blok–Lok Ltd.*, 208 F.3d 1339, 1346, 54 USPQ2d 1299, 1303 (Fed. Cir.2000). Anticipation is a question of fact. *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346, 51 USPQ2d 1943, 1945 (Fed.Cir.1999). Whether and to what extent material has been incorporated by reference into a host document is a question of law. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283, 54 USPQ2d 1673, 1680 (Fed.Cir.2000).

The party asserting a claim of inequitable conduct bears the burden of proving it by clear and convincing evidence. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1366, 57 USPQ2d 1647, 1652 (Fed.Cir.2001). Inequitable conduct is committed to the discretion of the trial court and is reviewed by this

court under an abuse of discretion standard. Inequitable conduct entails a two-step analysis, requiring first a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, requiring a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be held unenforceable. *Id.* Both intent and materiality are questions of fact reviewed for clear error. *Therma–Tru Corp. v. Peachtree Doors Inc.,* 44 F.3d 988, 991, 33 USPQ2d 1274, 1279 (Fed.Cir.1995).

### *DISCUSSION*

#### 1. The '842 Patent

As a preliminary matter, Southern Clay argues that the anticipation issue cannot be decided as a matter of law on appeal because United never moved for JMOL on the factual issue of whether Clocker anticipates the asserted claims. In *Young Dental Manufacturing Co., Inc. v. Q3 Special Products Inc.,* this court explained that "[w]here a party fails to make a motion for JMOL at the close of the evidence, the sufficiency of the evidence underlying presumed jury findings cannot be challenged through a renewed motion for JMOL or on appeal.... Nonetheless, the party may challenge the judgment on the ground that the judge committed an error of law or abused his discretion...." 112 F.3d 1137, 1141, 42 USPQ2d 1589, 1592 (Fed.Cir. 1997) (citations omitted).

█ This waiver rule does not apply here. When the judge *sua sponte* granted JMOL in favor of Southern Clay there was no reason to expect that it was "the conclusion of all of the evidence." It would be illogical to require a defendant to file a JMOL on its defenses at the close of the plaintiff's case in chief. In addition, the waiver rule would not apply in this instance because the jury never ruled on the issue of the sufficiency of the defendant's evidence; the judge found it insufficient as a matter of law. Basically the judge made a legal determination that there were no defenses available. The waiver rule mandates stricter deference to jury factual determinations, but it does not require deference to legal determinations. Therefore, it is within our discretion to not only reverse the grant of JMOL for the plaintiff, which is a legal determination, but also, if we find no factual issues in dispute, to grant JMOL of anticipation for United.

United argues that the '842 patent is invalid because it is anticipated by the Clocker patent. Southern Clay asserts that the Clocker patent cannot anticipate the '842 patent because it does not disclose pre-shearing prior to the reaction with the ammonium compound and it does not disclose a substantial average particle size reduction.

In response to these arguments, United argues that Clocker discloses substantial average particle size reduction as that term was construed by the district court. United explains that Clocker's stated purpose is to decrease particle size before treating the clay with a quat. United largely bases its assertion of anticipation on its argument that Clocker teaches reduction of particle size by the use of a Manton–Gaulin through its incorporation by reference of the Cohn patent. In the alternative, United asserts that Clocker inherently discloses reduction of particle size.

United argues that the Clocker patent incorporated the Cohn patent by reference and as a result the Clocker patent expressly discloses each limitation of the asserted claims of the '842 patent. To incorporate by reference the host document must cite the material in a manner that makes clear that it is effectively part of the host docu-

ment as if it were explicitly contained therein. The host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents. *See Advanced Display Sys.*, 212 F.3d at 1282, 54 USPQ2d at 1679.

In this case the Clocker patent states:

Exemplary of commonly employed physical or comminuting techniques for breaking the bonds between the colloidal particles in a clay particle aggregate are those techniques disclosed in United States Pat. Nos. Re. 25,965; 3,253,791; 3,307,790; and 3,348,778 [Cohn]. Generally speaking, the techniques disclosed in these patents effect some type of grinding or comminuting either by shear or abrasion so as to break the bonds in the clay aggregate particle and thus form several colloidal particles therefrom.

Clocker, col. 1, ll 46–55. The language in Clocker clearly states that it is citing Cohn for its bond-breaking methods. In *In re Voss*, the patent stated "Reference is made to [U.S. Pat. No. 2, 920971] ....for a general discussion of glass-ceramic materials and their production." 557 F.2d 812, 816, 194 USPQ 267, 269 (CCPA 1977). The court found that this incorporated the referenced patent because it demonstrated the patentee's intent to make that patent part of the specification. *Id.* at 817, 194 USPQ 270–71.

■ Southern Clay asserts that merely citing to a reference is not sufficient for incorporation of it, and that Clocker does not clearly identify which material in Cohn

is meant to be incorporated. *See Advanced Display*, 212 F.3d at 1282–83, 54 USPQ2d at 1679; *Application of Seversky*, 474 F.2d 671, 674, 177 USPQ 144, 146 (CCPA 1973). We disagree. Clocker specifically identifies that Cohn is relevant for its bond-breaking methods. Southern Clay further argues that because Clocker tells a person of ordinary skill in the art that Cohn's methods are inefficient, there is no intent for Cohn to be effectively part of Clocker, as required for incorporation. Teaching away, however, is neither relevant to the question of anticipation nor to the question of incorporation by reference. By citing to and specifically identifying the bond-breaking techniques discussed by Cohn, Clocker has demonstrated the intent to make that information part of the specification. The fact that the resulting method is taught to be sub-par is irrelevant for purposes of anticipation. *Celeritas Techs., Ltd. v. Rockwell Int'l. Corp.*, 150 F.3d 1354, 1361, 47 USPQ2d 1516, 1522 (Fed. Cir.1998) ("A reference is no less anticipatory if, after disclosing the invention, the reference then disparages it. Thus, the question whether a reference "teaches away" from the invention is inapplicable to an anticipation analysis."). Therefore, Clocker incorporates Cohn by reference. The result is that each and every limitation of the asserted claims of the '842 patent is disclosed.[1]

The asserted claims of the '842 patent are invalid as a matter of law as anticipated by Clocker, which incorporates Cohn by reference. As a result, we need not address United's claim construction arguments.

---

1. United has also shown that the asserted dependant claims, 2, 3, 5 and 6, are anticipated. As United explains, Cohn teaches impacting the clay at high velocity against a hard surface, anticipating claim 2. Cohn also teaches the use of pressure from 100 to 6000 psi, anticipating claim 3. In addition, Cohn describes the Manton–Gaulin as a homogenizing, anticipating claim 5. Finally, Clocker teaches the use of a slurry containing less than 25% by weight of solids, anticipating claim 6.

## 2. The '501 patent

United argues that the district court's *sua sponte* grant of JMOL of validity and enforceability should be vacated because it was procedurally and substantively in error. Both parties had agreed that all of United's claims, other than anticipation, turned on highly contested factual issues. Since United bore the burden of proof on invalidity and unenforceability, by denying United the opportunity to present its case in chief the court denied United the opportunity to be fully heard. In general the power to grant JMOL must be exercised with great restraint in order to avoid the possibility that a party will be precluded from presenting facts which make out a question for the jury. *Buchanan v. City of San Antonio*, 85 F.3d 196, 198 (5th Cir.1996). An even greater showing is required where the court grants a JMOL before the jury hears from the defendant. *Id.; see also United States v. Vahlco Corp.*, 720 F.2d 885, 889 (5th Cir.1983). The district court in this case improperly resolved genuine issues of material fact in granting the JMOL.

■ As the parties stipulated before trial, the validity issues in this case rest on disputed issues of material fact. The scope and content of the prior art and the differences between the claimed invention and the prior art are questions of fact underlying the obviousness determination that should be evaluated by the jury. *Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH*, 139 F.3d 877, 881, 45 USPQ2d 1977, 1981 (Fed.Cir.1998). Given the factual disputes about what the prior art teaches and whether it is different from the claimed invention, appellants must be allowed to present their evidence of anticipation and obviousness to a jury.[2]

United also asserts that the district court grant of JMOL of no inequitable conduct should be vacated. For support United cites to *Therma–Tru Corp. v. Peachtree Doors, Inc.*, where this court, citing to a number of other circuits, explained that it is well-settled law that when a case involves claims of law and equity and the legal claims are tried by a jury, the jury's verdict is binding on the trial court in its disposition of the equitable claims. 44 F.3d 988, 995, 33 USPQ2d 1274, 1278 (Fed.Cir.1995). In *Therma–Tru* this court found that the judge's determination of inequitable conduct was an abuse of discretion because it was based on a determination that the patentee had intentionally withheld an enabling disclosure from the Patent and Trademark Office, however, the jury had previously found that the patent was valid, and declined to hold that it was not enabled. *Id.* at 993–94, 44 F.3d 988, 33 USPQ2d at 1278–79.

■ In this case, the inequitable conduct issue has factual questions that are intertwined with the validity issues. The materiality of some of the prior art references is directly at issue both in the validity context and the inequitable conduct context. Therefore, it was inappropriate for the judge to make the legal determination without submitting the factual issues to the jury. Since it was an abuse of discretion for the judge to grant JMOL on the validity issues, we also vacate the court's entry of JMOL that there was no inequitable conduct and remand so that the trial court can decide the question in the context of the jury trial and the jury's factual deter-

---

**2.** It is noteworthy that a claim construction of the term "non-clay impurities" as used in the '501 patent would benefit the parties. Although the parties had stipulated that only two terms needed to be construed and this term was not among them, a review of their arguments to this court indicates that the parties are indeed in dispute about what this term means.

minations as to what art is relevant and what is material.

## CONCLUSION

Therefore, we reverse the district court JMOL of anticipation of the '842 patent and hold that the asserted claims of the '842 patent, claims 1, 2, 3, 5 and 6, are anticipated as a matter of law. Furthermore, we vacate the district court's JMOL that the '501 patent is not invalid and that there was no inequitable conduct and remand for further proceedings not inconsistent with this opinion. Finally, we vacate the damages award and the grant of attorney fees.

No costs.

MAYER, Chief Judge, dissenting.

MAYER, Chief Judge.

Because United States Patent No. 3,951,850 ("Clocker") does not incorporate United States Patent No. 3,348,778 ("Cohn") by reference, this court errs in concluding that Clocker anticipates U.S. Patent No. 4,664,842 (the '842 patent). And because the district court correctly concluded that United Catalyst could not present sufficient evidence to render U.S. Patent 5,110,501 (the '501 patent) invalid, I would affirm the district court's grant of judgment as a matter of law, the jury's findings that neither the '842 patent nor the '501 patent are invalid, and the finding that both patents are infringed by United Catalyst.

### The '842 Patent

The court holds that Clocker anticipates the '842 patent because it incorporates Cohn by reference through the following phrase:

> Exemplary of commonly employed physical or comminuting techniques for breaking the bonds between the colloidal particles in a clay particle aggregate are those techniques disclosed in United States Pat. Nos. Re. 25,965; 3,253,791; 3,307,790; and 3,348,778. Generally speaking, the techniques disclosed in these patents effect some type of grinding or comminuting either by shear or abrasion so as to break the bonds in the clay aggregate particle and thus form several colloidal particles therefrom.

Clocker, col. 1, ll. 46–55. *Ante*, at ——.

Whether a patent incorporates a reference is a question of law and is determined based upon whether one of skill in the art would consider it to have been incorporated. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283, 54 USPQ2d 1673, 1680 (Fed.Cir.2000). "To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and *clearly indicate where that material is found in the various documents.*" *Id.* at 1282, 212 F.3d 1272, 54 USPQ2d at 1679 (emphasis added), *citing In re Seversky*, 474 F.2d 671, 674, 177 USPQ 144, 146 (CCPA 1973) (To incorporate another document by reference, the host document must "clearly identify[ ] the subject matter which is incorporated and where it is to be found."), and *In re Saunders*, 58 C.C.P.A. 1316, 444 F.2d 599, 602–603, 170 USPQ 213, 216–17 (CCPA 1971) (reasoning that a rejection for anticipation is appropriate only if one reference "*expressly incorporates a particular part*" of another reference.) (emphasis added); Manual of Patent Examining Procedure § 608.01(p) (8th ed. Aug.2001) ("Particular attention should be directed to specific portions of the referenced document where the subject matter being incorporated may be found."). Additionally, "mere *reference* to another application, or patent, or publication is not an *incorporation* of anything ..." *In re Sev-*

*ersky,* 474 F.2d at 674, 177 USPQ at 146 (emphasis in original).

The law is clear that in order to incorporate material by reference, an applicant must not only identify the material to be incorporated, but must also "clearly indicate where that material is found in the various documents." The court correctly states that rule yet does not apply it to the facts of this case. Clocker merely identifies four references as being exemplary of commonly employed physical or comminuting techniques for breaking the bonds between the colloidal particles; it does not show where that material can be found in those references. Therefore, Clocker does not incorporate Cohn by reference and cannot anticipate the '842 patent.

Such a relaxed interpretation of the incorporation by reference requirements would have far reaching ramifications. Each examiner in the Patent and Trademark Office ("PTO") is charged with fully reviewing the entire specification of each patent application. *See* Manual of Patent Examining Procedure § 704.01. We have held that incorporating material by reference is the same as if the information were included directly in the host document. *In re Lund,* 54 C.C.P.A. 1361, 376 F.2d 982, 989, 153 USPQ 625, 631 (CCPA 1967). By allowing the phrasing found in Clocker to be sufficient to incorporate material by reference, the court has placed an undue burden on examiners and the PTO. Under the court's reasoning, Clocker would incorporate by reference an additional thirteen patents, none of which has citations to columns or line numbers to ease the burden on the examiner or those of skill in the art who wish to practice the invention.

Besides failing to follow the letter of the law, the court oversteps its bounds by rendering the '842 patent invalid for anticipation on appeal. As we held in *Advanced Display,* "if incorporation by reference comes into play in an anticipation determination, the court's role is to determine what material in addition to the host document constitutes the single reference. The factfinder's role, in turn, is to determine whether that single reference describes the claimed invention." *Advanced Display Sys.,* 212 F.3d at 1283, 54 USPQ2d at 1680. The district court ruled that Clocker did not incorporate Cohn by reference, and therefore, the jury never considered the issue. Holding that Clocker incorporates Cohn by reference requires remand to the district court for an anticipation determination by the factfinder.

## The '501 Patent

Because the district court granted judgment as a matter of law at the close of Southern Clay's case-in-chief, this court concludes that United was denied the opportunity to be fully heard on the issue of invalidity. Based upon pretrial stipulations of the parties, the court reasons that the scope and content of the prior art are disputed issues of material fact that should be presented to the jury. This is a mischaracterization of what happened below, the result of which would be a trial of issues on which United clearly cannot sustain its burden.

At trial, the district court imposed a "one-time call rule." In the interest of efficiency, this rule required that each witness was only allowed to take the stand once, regardless of whose witness it was or who called that person to testify. Each party was required to extract all of the evidence it sought to introduce from that witness during that witness's one visit to the stand. During its case-in-chief, Southern Clay called the majority of United's witnesses and United was allowed to make a proffer of the testimony of the few remaining witnesses it intended to call. The proffered evidence falls well short of rais-

ing a genuine issue of material fact as to the validity of the '501 patent.

United argues that the '501 patent is anticipated by Clocker either directly because of its incorporation of Cohn or indirectly because it inherently discloses all of the limitations of the claimed invention. As set out above, Clocker fails to incorporate Cohn by reference. Additionally, United did not proffer sufficient evidence of a genuine issue of material fact as to whether Clocker inherently discloses Manton–Gaulin shear. United argued that Clocker's general mention of "high-shear" by definition included Manton–Gaulin shear. "To establish inherency, the extrinsic evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill. Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *In re Robertson*, 169 F.3d 743, 745 (Fed.Cir. 1999) (internal citations omitted). There are many types of high shear, and United proffers no more than the conclusory statements of its expert, Dr. Constantine Armeniades, and a document that mentions high shear and Manton–Gaulin shear in the same sentence, to show that one of skill in the art would include Manton–Gaulin shear in high shear. This falls well short of showing that the Manton–Gaulin shear is necessarily present in a description of high shear.

United also argued that British Patent No. 1,439,828 ("Laporte") inherently anticipated the claim limitations of the '501 patent. United admitted that Laporte did not disclose Manton–Gaulin shear, but it argued along the same line of reasoning as set out above in reference to Clocker, that Manton–Gaulin shear was inherent. This

argument fails for the same reason it did in Clocker.

United also argued that the '501 patent is obvious over: (1) Clocker in view of Cohn; (2) Clocker in view of Simon et al., *Effects of Processing on the Rheology of Thixotropic Suspensions*, 50 J. Pharmaceutical Sciences 830 (1961) ("Simon"); (3) Laporte in view of Simon; and (4) Laporte in view of Cohn, but there is no issue of material fact as to these references that should have been presented to a jury. Not only does Clocker teach away from Cohn, but United's patent counsel admitted as much in an opinion. United's expert, Armeniades, testified that there was no suggestion or motivation to combine Clocker and Simon. Other than Armeniades unsupported, conclusory opinion that the knowledge of one of skill in the art would yield a suggestion or motivation to combine Laporte and Simon or Laporte and Cohn, he was unaware of any actual suggestion or motivation. While a suggestion or motivation to combine two references may come from the general knowledge of those of ordinary skill in the art, there must be actual evidence of such a suggestion or motivation and the showing must be clear and particular. *In re Dembiczak*, 175 F.3d 994, 999, 50 USPQ2d 1614, 1617 (Fed.Cir.1999) *abrogated on other grounds*, in *In re Gartside*, 203 F.3d 1305, 53 USPQ2d 1769 (Fed.Cir.2000); *see also*, *Smith Indus. Med. Sys. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356, 51 USPQ2d 1415, 1421 (Fed.Cir.1999) ("That knowledge *may* have been within the province of the ordinary artisan does not in and of itself make it so, absent clear and convincing evidence of such knowledge.") (emphasis in original); *see In re Fine*, 837 F.2d 1071, 5 USPQ2d 1596 (Fed.Cir.1988). The conclusory statements of Armeniades fail to meet this standard, even if taken in a light most favorable to United. *In re Dembiczak*, 175 F.3d at 999, 50 USPQ2d at

1617 ("Broad conclusory statements regarding the teaching of multiple references, standing alone, are not "evidence." E.g., *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1578, 27 USPQ2d 1129, 1131 (Fed.Cir.1993) ("[C]onclusory statements, however, are not sufficient to establish a genuine issue of material fact.")).

In addition to failing to proffer adequate evidence of a suggestion or motivation to combine the above mentioned references, United has proffered or presented no evidence to overcome the mountain of evidence submitted by Southern Clay on non-obviousness, the majority of which was educed from United's own employees, five of whom testified that they were surprised by the success that the use of the Manton–Gaulin process achieved. Additionally, Southern Clay presented evidence that United's own attempts to achieve products comparable to Southern Clay's failed until it copied the use of the Manton–Gaulin process.

The issue of infringement was fully presented to the jury who returned a verdict of willful infringement against United. United's only defenses were invalidity or unenforceability and because it cannot prove the elements of those defenses, I respectfully dissent.